(No. 19961.

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* MARIA ZWIENCZAK, Plaintiff in Error.

*Opinion filed February 21, 1930.*

T. Fred Laramie, for plaintiff in error.

Oscar E. Carlstrom, Attorney General, John A. Swanson, State's Attorney, and James B. Searcy, (Edward E. Wilson, and John Holman, of counsel,) for the People.

Mr. Justice Stone delivered the opinion of the court:

Plaintiff in error was found guilty in the criminal court of Cook county of the charge of murder of one Ann P. Fazio by means of abortion. The jury fixed the punishment at fourteen years in the penitentiary. She seeks reversal of the judgment on the ground, (1) incompetency of her counsel; (2) the verdict is against the law and the evidence; and (3) the court erred in instructing the jury.

Concerning the question of competency of the counsel, the record discloses that she was defended in the trial court by two attorneys licensed to practice law in this State. They were counsel of her own choosing. Persons accused of crime have the right to choose their own counsel, and where this is done a court of review will not, upon a change of counsel, consider the question whether, if objections had been made or questions raised which were not made or raised on the trial, a different judgment might have resulted. This court has held that where young and inexperienced counsel have been appointed to defend a person accused of crime, the trial court should, in the absence of objection by such counsel, prevent the introduction of incompetent evidence of an extremely prejudicial nature. (*People* v. *Blevins,* 251 Ill. 381.) Such is not the rule in a case where a party employs counsel of his own selection. Failure of counsel employed by a defendant to exercise care or skill in the trial court does not affect the rule that this court reviews only the record, and a reversal of a

judgment on the ground that the defendant has not been properly represented in the trial court is not justified where such counsel is selected by the accused. *People* v. *Thompson,* 321 Ill. 594; *People* v. *Schulman,* 299 id. 125; *People* v. *Barnes,* 270 id. 574; *People* v. *Anderson,* 239 id. 168.

It is next contended that the verdict is not supported by the facts. In support of the charge against plaintiff in error the State introduced the testimony of the coroner's physician showing that he made a post-mortem examination of the body of the deceased on the 13th day of February, A. D. 1929, the day on which she died; that the body presented no marks of external violence; that the breasts contained colostrum, and that he found a condition of general peritonitis, septic internal genetalia and multiple abscesses; the cervix of the uterus presented multiple gangrenous lacerations. He gave as his opinion that the deceased died from generalized peritonitis secondary to a septic abortion, and that in his opinion it was not necessary to perform such an operation to save the life of deceased. He stated that he did not know who committed the abortion.

Ethel Colby, a sister of deceased, stated that deceased lived with her in their home; that on the fourth of February, the day on which she went to the home of plaintiff in error, she was in good health; that witness saw her at the latter place on February 11 and her sister was very sick because of an abortion; that she knew of her own knowledge that the operation was performed by plaintiff in error; that she did not find out the cause of her death. She testified that deceased lived at home during her married life, was separated from her husband and had been for about a year, and that a divorce proceeding was pending.

Elmer Kagel testified that he had known deceased for a little over a year and had kept steady company with her for a few months prior to her death; that he knew of the divorce proceeding and intended to marry deceased after her divorce. He testified that he saw deceased on

February 4 at the home of plaintiff in error; that her condition then was all right as far as he knew; that he saw her almost every day after she went to the home of plaintiff in error, and that the second morning thereafter she began to be ill and grew worse during the week, and that on the 11th he assisted in taking her to the hospital.

Marion Swiont, a physician, testified that he was called to the home of plaintiff in error on the 11th of February; that he there saw deceased; that she was very ill,—almost lifeless,—and that he diagnosed her illness as general peritonitis. He testified that he had a talk with plaintiff in error about the illness of deceased and that she requested him to give the patient some medicine to make her well. He testified that he refused to do this but told her the thing to do was to take the patient to the hospital. He also testified that plaintiff in error told him she operated on deceased but did not describe the system used, and that three or four days later she, with another midwife, had curetted her. He testified that he went to the hospital to see deceased on the evening of the 12th of February, that she died on the morning of the 13th, and that he could not say whether it was necessary to perform an abortion to save her life.

Edward Conrath testified that he frequently did work of chauffeur for plaintiff in error; that he took a woman to the hospital at plaintiff in error's request; that there was a young man in the car with her whom he identified as Kagel; that he overheard the woman in the car say that she was sorry she caused so much trouble for plaintiff in error, as she had been kind to her.

Two police officers testified that they took plaintiff in error in custody on a warrant and that she refused to make a statement until she had seen her lawyer.

Plaintiff in error testified that she was a licensed midwife; that when deceased came to her house she was very weak and was flowing excessively; that she remained there

about ten days; that she requested deceased to get a doctor, but she would not do so; that later plaintiff in error called Dr. Swiont; that the doctor came and looked at deceased, examined her and gave her medicine. She denied having told the doctor that she did anything to cause an abortion or operated on her. On cross-examination she testified that all she did to take care of deceased was to use a syringe and give her food. Dr. Swiont was recalled in rebuttal and denied that he gave a prescription for the deceased. Plaintiff in error again took the stand and reasserted that he did give her a prescription and that she took it to a drug store at Fifty-ninth and Francisco avenue and had it filled and gave the medicine to the deceased; that she did not know what the prescription was for.

Plaintiff in error contends that there is no showing that deceased was pregnant, as required to establish the crime charged. There is, however, ample evidence in the record that she aborted. This, of course, could be possible only in a state of pregnancy in her. The record amply supports the charge of the indictment in that particular.

It seems to be argued that the testimony of the coroner's physician that death was caused by an abortion was incompetent. That an abortion has occurred may be, and perhaps is, necessarily, the conclusion by medical witnesses from other more detailed facts, but the existence of an abortion is itself a physical fact and one upon which opinion evidence may be asked of medical men. *People* v. *Carrico,* 310 Ill. 543; *People* v. *Patrick,* 277 id. 210; *People* v. *Hagenow,* 236 id. 514.

It is contended that it is not shown that the abortion was performed by plaintiff in error. If the testimony of Dr. Swiont is to be believed she admitted to him that she had performed an operation. Ethel Colby testified, without cross-examination, that she knew that plaintiff in error committed the abortion. All the evidence, even plaintiff in error's own statement, tends to prove that an abortion had

been performed by someone and that this was the cause of the illness of the deceased. In addition, the evidence of the State's witnesses is that at the time deceased went to the home of plaintiff in error she was in good health. The jury were justified in finding plaintiff in error guilty.

It is also objected that the court erred in giving People's third instruction. This instruction is as follows:

"The court instructs the jury that if you find from the evidence in this case beyond a reasonable doubt that Ann P. Fazio was pregnant with child, and that she aborted or miscarried from an operation upon the private parts of her body from which death ensued, and that such operation was performed, with an intent to cause an abortion or miscarriage by the defendant, Maria Zwienczak, otherwise called Maria Zwiencizak, or by any person acting under the defendant's direction, or if the defendant aided, abetted and encouraged the operation in any manner, and that the said operation was not done as necessary to preserve the life of Ann P. Fazio, then in such case the court instructs you that as a matter of law, the defendant is guilty of murder in the manner and form as charged in the indictment."

This instruction was condemned under the facts in *People* v. *Rongetti,* 331 Ill. 581, but was not there held to be ground for reversal of the judgment. While in this case there is no evidence that plaintiff in error aided, abetted or encouraged the abortion so as to render her an accessory before the fact, we are of the opinion that the giving of this instruction did not constitute prejudicial error.

It is also argued that the court erred in giving an oral instruction to the jury. It appears that after the evidence had been taken the defendant secured additional proof that a prescription had been issued by Dr. Swiont at the time of his visit to the home of plaintiff in error. The court directed that this additional proof be received and instructed the jury that the defense had brought in the prescription, and that the court considered it fair to the jury,

as a matter of common justice, that the jury be apprised of that fact; that what the prescription contained was immaterial and that its production went only to the matter of credibility of witnesses. No complaint of this can be made by plaintiff in error since the evidence was sought to be offered, and the oral instruction was given, for her benefit.

There is no error in this record which justifies a reversal of the judgment, and the same will be affirmed.

*Judgment affirmed.*