(No. 24780.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* SOPHIE MANN, Plaintiff in Error.

*Opinion filed December 15, 1938.*

ALBERT SABATH, (LOUIS ROSENFELD, and WILLIAM S. SCHWAB, of counsel,) for plaintiff in error.

OTTO KERNER, Attorney General, THOMAS J. COURTNEY, State's Attorney, and A. B. DENNIS, (EDWARD E. WILSON, JOHN T. GALLAGHER, MELVIN S. REMBE, and BLAIR L. VARNES, of counsel,) for the People.

Mr. JUSTICE STONE delivered the opinion of the court:

Plaintiff in error, Sophie Mann, was found guilty in the criminal court of Cook county on a trial before the court without a jury, of manslaughter. She had been indicted, with her sister, Gertrude Plenz, on the charge of murder of Mary Kissell by abortion. Gertrude Plenz was found not guilty.

The deceased, Mary Kissell, was about twenty-five years of age, the mother of a daughter two and one-half years old. She was married but was not living with her husband. The testimony shows that prior to the illness causing her death she had been in good health. She went to the County Hospital on July 17, 1937, and on August 2, following, died there as result of septicemia, produced, as the evidence of the People tends to show, by an abortion or attempted abortion.

The principal testimony for the prosecution was that of Robert Crelly, who had been keeping company with the deceased. He testified that on the evening of June 15, 1937, he went with her to the home of Gertrude Plenz and Sophie Mann, both of whom were licensed midwives, where the former made an examination of the deceased, after which deceased told the witness that she had found, as result of the examination, that deceased was pregnant; that she asked Gertrude Plenz what to do about it and that the latter replied that she did not do that sort of work but that Mrs. Mann did do that, and that she would take care of her, and that the deceased then went into an examining room with Sophie Mann, staying there about twenty-five minutes. He testified that after she came out she told the witness it would cost about $25 and that he gave Gertrude Plenz $3 to pay for the examination which she had made of the deceased, and that he gave $15 to the deceased to pay to Sophie Mann. Crelly further testified that three days later he and deceased again went to the home of Gertrude Plenz and Sophie Mann where the deceased went into a room with Sophie Mann, remaining there about fifteen minutes. When she came out she said that everything was all ready and she was ready to go home. He testified, also, that on June 19 he went to the home of the defendants alone, saw Sophie Mann and gave her $10 as payment of the balance for the treatment she was giving the deceased; that Sophie

Mann took the money and said that Mary would come out all right.

It appears, also, that on July 15 deceased went to her family physician, who examined but did not treat her, and referred her to the County Hospital. She went to the County Hospital, July 17, acutely ill. The testimony of the doctor there was that he made an examination and that he thought she was pregnant at the time but was not prepared to say whether she then contained the fetus or whether it had been expelled.

The coroner's physician who conducted the *post mortem,* testified he found evidences of septicemia which he considered to be of internal origin. He testified that he found evidence of pregnancy consisting of placental remnants on the anterior wall of the fundus, and other evidence. While he testified that septicemia may be caused by instrumentation, he did not testify that there was evidence of such use of instruments as the cause of septicemia in the case of the deceased, nor did he testify that the examination showed any evidence of the manner in which an abortion had been brought about.

For the defendants, Gertrude Plenz testified that the young man and woman had called at her door; that Mrs. Mann answered the door and they had asked for the witness; that the man asked her to examine the woman with him because of her condition, and upon inquiry as to what the examination was for, replied, "Well, she is two weeks overdue." The witness testified that she agreed to examine her and told him that the cost would be $3; that she then examined the deceased, found the uterus swollen and inflamed, and that she told the deceased that she had been taking something and that deceased replied she had taken a good deal of dope that her boy friend had given her, including pills and ergot. The witness testified that she told deceased that in that length of time she couldn't tell whether

or not she was pregnant, but advised that for the soreness she should take boric acid douches twice a day; that the deceased replied she could not do that because her mother would catch on, and asked if Mrs. Mann couldn't give them to her, and that the witness replied: "Well, you can ask her." She testified that she had told Crelly and the deceased that she would have nothing to do with a matter of an abortion and that deceased went with Mrs. Mann into the examining room where she remained for about ten minutes, but that the witness didn't know what Mrs. Mann did nor whether she gave her douches.

Sophie Mann, the plaintiff in error, in her testimony substantiated the testimony of her sister concerning the call of Crelly and the deceased. She testified that she talked with the deceased and examined her and that the latter told her she was not pregnant, and that the witness gave a treatment of cotton pack and told her to remove and cleanse it each night; that she did nothing else for the deceased and made no other examination after the first time, although deceased came to see her two or three times after that. She admitted receiving the $10 from Crelly, but testified she later returned it to deceased at the latter's request. This was, in main, the testimony in the case.

Plaintiff in error argues that the evidence, as a whole, fails to establish the guilt of the defendant beyond a reasonable doubt; that no evidence was offered on behalf of the People to negative the exceptions embraced in the statute governing the crime of abortion, and that error was committed in receiving the testimony of the coroner's physician on the ground that it invaded the province of the court trying the case. The testimony to which this last objection is directed was his statement that in his opinion the septicemia was caused internally. It is sufficient to say, as to this last objection, that the testimony does not invade the province of the court hearing the case. Although the testimony that the septicemia was caused internally is, in

a measure, a conclusion, yet it is such a conclusion as comes within the proper limits of testimony of an expert witness. It does not, however, bear on the question whether septicemia was caused by anything done by the defendant or whether it was caused illegally. Under the holdings of this court this objection is not good. *People* v. *Zwienczak,* 338 Ill. 237; *People* v. *Schultz,* 260 id. 35.

Concerning the contention of failure of the evidence to establish the guilt of the defendant, an examination of the record discloses that no direct evidence was given that an abortion had been committed by anyone. The coroner's physician gave no testimony that he found cuts, lacerations or wounds which would indicate that an abortion had been produced or attempted by instrumentation. His testimony on that point was to the effect that the deceased had died from septicemia from an internal cause, and that septicemia might have been the result of instrumentation. He also testified that the taking of ergot would not account for the infection which he found; that the presence of placental remnants, which was all that remained, would indicate that the fetus had been expelled; that he could not say with certainty, from the autopsy, whether deceased had taken drugs in an attempt to cause a miscarriage, whether instruments had been used or whether it occurred through other causes.

There was no direct evidence that the plaintiff in error performed or attempted to perform an abortion. According to the testimony of Crelly, he and the deceased went to the office of Gertrude Plenz for the purpose of having the deceased examined and to learn whether she was pregnant, and to see what could be done about it if she were. No testimony other than that of the defendants appears in the record as to what took place in the examining room or what was said there. Although Crelly testified in rebuttal that he did not know what ergot is, and had never given deceased any medication of any kind, the evidence

does not exclude the possibility that the deceased may have taken some drug herself, of her own initiative, or that she might have received the infection causing her death in other ways.

Taking the evidence as a whole it is not satisfactorily convincing as to the guilt of plaintiff in error and does not establish her guilt beyond a reasonable doubt. Doubt exists as to what actually occurred in the examining room and such doubt goes to the only times at which guilt could be fixed upon the plaintiff in error, as there is no evidence that she saw the deceased at any other place.

The judgment of the criminal court is reversed.

*Judgment reversed.*