(No. 19312.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* WALTER JOHNSON *et al.*—(CLELL MAY, Plaintiff in Error.)

*Opinion filed February 20, 1929.*

HARLEY F. BELL, and ARTHUR F. MILLER, for plaintiff in error.

OSCAR E. CARLSTROM, Attorney General, WIRT HERRICK, State's Attorney, and ROYCE A. KIDDER, for the People.

Mr. JUSTICE DUNN delivered the opinion of the court:

Clell May was convicted of burglary in the circuit court of DeWitt county and has sued out a writ of error. He was indicted jointly with Ivan Scroggins and Walter Johnson but was tried alone, Scroggins being at the time in the United States army and Johnson serving a term of imprisonment in the State Reformatory at Pontiac for "robbery with a gun," under the sentence of the Macon county circuit court.

The evidence shows, beyond a reasonable doubt, that during the night of September 30, 1927, the building of John Henneberry, at Wapella, in DeWitt county, used as a filling station, was burglariously entered and a cash register, an American Beauty radio, five automobile tires, several cartons of cigarettes and some candy were stolen. Four of the tires and the cash register were recovered a few days later in a briar patch in the woods about seventy-five yards off the road, southwest of Decatur. The other articles stolen were not recovered. The plaintiff in error was twenty-three years old.

Walter Johnson was brought from the State Reformatory by means of a writ of *habeas corpus,* and testified that he was twenty years old, had known the plaintiff in error about one and a half or two years and had run around with him once in a while. On the night of September 30, 1927, he was staying in a house on the Southside drive, near Decatur, twenty-three or twenty-four miles from Clinton. He did not remember seeing the plaintiff in error that night but saw him the next morning about eight o'clock, or perhaps seven. When he woke up May and Scroggins were sitting outside in a car. They came to the door and knocked. He let them in and had a conversation with them there.

They said they had been waiting until he got up, and asked if they could leave some stuff in the basement—a cash register, automobile tires and radio. He saw the things there and told them he did not want them in the basement, and they took them away. He asked them where they got the property, and they said they "made a place." He testified that afterward, in a conversation about the radio, May or Scroggins told him that they sold the radio in Springfield to a woman who lived over a theater or something.

At the request of the State's attorney the court, over the objection of the plaintiff in error, called Florence Ford as a witness. The State's attorney, in requesting the court to call her, stated that about two weeks before the trial she had told certain persons named that she bought an American Beauty radio from Clell May and gave him $30 for it; that she knew where it was and would get it back so that it might be had for the purpose of the trial, but that a week afterward, at the time when she had agreed to have the radio, she said that she did not buy it but that a girl working in her rooming house had bought it; that she merely let the girl have $10 for it, and the girl bought it from a tall, curly-headed fellow who was not Doc May; that she knew Clell May and he did not sell her the radio,—that is, she had made two contradictory statements about having bought a radio of the plaintiff in error.

Florence Ford testified that she had lived continuously at 111½ North Sixth street, in Springfield, for nine years and had known the plaintiff in error over a year but had no business dealings with him shortly after October 1 last year and did not buy a radio from him. "He was with the fellow. I got it from a tall, curly-headed fellow some time in October. It was an American Beauty radio with a loud speaker." She was then cross-examined by the State's attorney and said: "It was some time in the latter part of October. I did not know the tall, curly-headed fellow. It is the defendant I referred to when I said Doc May. I

did not know whether this tall, curly-headed fellow was Ivan Scroggins. I never heard his name. They called him 'Curly,' was all I know. I had not had any conversation with Clell May prior to that time in regard to buying that radio. * * * I paid the curly-headed fellow the money for the radio. I paid him $30." She also testified on cross-examination, over the objection of the plaintiff in error, that she had a conversation with Jack Walsh and Wynn Leonard, deputy sheriffs of Sangamon county, J. R. Crum, deputy sheriff of DeWitt county, and John Henneberry, the prosecuting witness, on June 9, 1928, in her place of business, but she did not state in their presence that she bought an American Beauty radio from Doc May and paid him $30 for it. These four men were then called by the State's attorney and testified, over objection, that she did make that statement in the conversation, and this was all the evidence for the prosecution.

The plaintiff in error testified in his own behalf and denied having any connection with or knowledge of the crime or the stolen property, contradicting specifically and in every detail the testimony of Johnson tending to incriminate him. He and his father also testified to facts showing an alibi, which, if believed by the jury, would have justified a verdict of not guilty.

It is contended that the evidence was not sufficient to prove the defendant's guilt beyond a reasonable doubt. The only legal evidence tending to connect him with the crime is that of Johnson, who was shown to be a convicted felon undergoing imprisonment for one of the highest crimes recognized by the law and who was indicted jointly with the defendant as an accomplice in the burglary charged. The credit to be given to his testimony was a question which it was the province of the jury, and not the court, to determine, and if the jurors were convinced by his testimony, together with all the other evidence, facts and circumstances in the case, beyond a reasonable doubt, that the

defendant committed the crime with which he was charged, their verdict of guilty cannot be set aside because not sustained by the evidence.

The plaintiff in error insists that the court erred in calling Florence Ford as the court's witness and permitting her to be cross-examined and impeached on immaterial matters. The practice of the court's calling a witness at the request of the prosecution in the trial of a criminal case has been recognized, but it has been repeatedly announced that it ought not to be adopted except where it is shown that otherwise there may be a miscarriage of justice. (*People* v. *Cardinelli*, 297 Ill. 116; *People* v. *Dascola*, 322 id. 473.) The rule which should govern in such case was announced in *Carle* v. *People*, 200 Ill. 494, that where there is an eye-witness to the crime whose veracity or integrity the State's attorney may doubt, he is not obliged to call such witness but the court may call him and leave him to cross-examination by either side. This practice, the court said in a subsequent case, "should not be extended beyond the limits of the rule announced in *Carle* v. *People, supra,* and when the circumstances justify a court in calling a witness, the cross-examination should be limited to the issues involved and kept within proper bounds." (*People* v. *Cleminson*, 250 Ill. 135.) The court recognized the gross abuse of the right of cross-examination which occurred in the case last cited, but, in view of the clear and overwhelmingly convincing evidence of the defendant's guilt, refused to reverse the judgment in spite of the manifest error. In the present case the error in the application of the rule is as manifest but the unquestionably convincing proof of the plaintiff in error's guilt in spite of the error is not manifest. Florence Ford knew nothing about the crime. She was not present at its commission or a witness to anything in connection with it. The radio she got was not identified as the stolen radio. The rule had no application to her. Her examination in chief produced no result except

the statement that she had lived at 111½ North Sixth street continuously for nine years, had known the plaintiff in error over a year, had no business dealings with him shortly after October 1 last year, and did not buy a radio from him; that she got an American Beauty radio from a tall, curly-headed fellow some time in October and the plaintiff in error was with him. There was nothing in this testimony tending to prove the plaintiff in error's guilt or innocence. There was nothing to cross-examine her about. The State's attorney was not surprised by her testimony. His statement when he requested her called as a court's witness shows that he had reason to expect that she would testify as she did. She answered as she would have answered if he had called her himself. If he had done so and been taken by surprise by her answers the court would probably have permitted him to ask her questions as on cross-examinations and to ask her leading questions to refresh her memory or to probe her conscience, but in that case he should not have been permitted to ask her questions for the purpose of impeaching her. He should not have been permitted to do so under the circumstances of this case. Her testimony as it appears in the record is entirely immaterial. She said she bought no radio of the plaintiff in error but did buy one of another person whom he was with. Her impeachment by showing that she had said at another time that she had bought a radio of the plaintiff in error could have no effect to prove that she did buy a radio of the plaintiff in error. So far as he was concerned her statement was mere hearsay. Its greatest effect could be no more than to authorize the jury to disregard her testimony, but it was not evidence against the plaintiff in error that she had bought a radio from him, and the condition of the evidence would be the same as if she had not testified. The State's attorney was, however, permitted to ask her if she had not on June 9, 1928, stated in the presence of the four persons named that she had bought an

American Beauty radio of Doc May and paid him $30 for it, and she denied making the statement. The whole matter being immaterial her answer on cross-examination was conclusive. The four persons named in the question to her were, however, permitted to testify that she did make the statement to them, and thus the prosecution was enabled to present to the jury evidence of her unsworn statement that she had bought a radio from the plaintiff in error. The only object of having her called as a witness was not to get the testimony which she was expected to give, but to get before the jury her unsworn statement which it was intended to offer under the guise of impeachment. Having been admitted by the court as evidence in the case, it was certain to be regarded by the jury as evidence of the fact of purchase, though it had in law no effect for that purpose. The cross-examination had nothing to do with the issues involved in the case but was altogether collateral. It was error for the court to call her as a court witness, to permit the impeaching question to be put to her on cross-examination, and to permit the impeaching witnesses to testify contradicting her answers.

An unnecessary and unreasonable number of instructions was requested of the court, twenty-four were given for the People, the same number for the defendant and twenty-one asked for the defendant were refused—sixty-nine instructions in all presented to the court, occupying twenty-two of the sixty-two pages of the abstract, in a case dependent entirely on a simple state of facts and the credibility of witnesses, involving no dispute as to the well known rules of law governing the case. All the law which could have been of any assistance to the jury could have been stated easily in one-fourth of the number of instructions asked or half the number asked by each side. Counsel for the plaintiff in error have objected to a number of the instructions given for the People. The third instruction stated that while under the law the defendant was a

competent witness, yet his credibility "is left by the statute to the consideration of the jury; and, in considering the amount of credit or value you will give to the testimony of Clell May in this case, you may take into consideration his interest in the case, his desire to avoid punishment for the crime with which he is charged, and all other interests or motives that would likely surround or affect the testimony of a person similarly surrounded or situated." This instruction singles out the testimony of the defendant by stating that its credibility is left by the statute to the consideration of the jury, and in considering the amount of credit to be given his testimony the jury may take into consideration his interest in the case, his desire to avoid punishment, and all other interests or motives that would likely surround or affect the testimony of a person similarly surrounded or situated. The law is, that when the accused testifies in his own behalf he becomes the same as any other witness, and his credibility is to be tested by and subjected to the same tests as are legally applied to any other witness. In thus singling out the defendant and calling the attention of the jury to his interest in the case and his desire to avoid punishment, without telling them that the same tests should be applied to all the witnesses in the case, the court erred. (*People* v. *Schuele,* 326 Ill. 366; *People* v. *Washington,* 327 id. 152; *People* v. *Bell,* 328 id. 446.) The instruction refers only to the testimony of the defendant, with no other instruction applying the same rule to the testimony of other witnesses. The same rule which should apply to the plaintiff in error should also apply to all the other witnesses, including Walter Johnson. He was indicted with the defendant and his interest was equal to the defendant's. If May was convicted by Johnson's testimony Johnson would not fear further prosecution of the indictment against him. Moreover, Johnson had the further interest that he was serving a sentence for a felony of which he had been convicted, and, as he testified on cross-examination, though

he had not been told that the case against him would be dropped if he would take the stand and testify for the State, "they told me I would probably get out a whole lot quicker than what I am—I am serving time now. I am supposed to have a nice word from them." It was also erroneous to advise the jury that it might take into consideration "all other interests or motives which would likely surround or affect the testimony of a person similarly surrounded or situated," without any reference to such interests or motives appearing from the evidence.

Instructions 4 and 5 were as follows:

4. "The jury are instructed that malice is always implied in law from a willful and criminal act unless the evidence shows that the defendant was acting from some innocent or proper motive.

5. "The court instructs the jury, as a matter of law, that, to constitute the offense charged in this case, the intent alleged in the indictment is necessary to be shown, but that direct and positive testimony is not necessary to prove the intent; it may be inferred from the facts and circumstances shown by the evidence."

Instruction 4 was an abstract proposition of law not involved in the case. The question of malice was not in issue but the question of identity. Instruction 5 assumed in the last clause that the facts and circumstances shown by the evidence justified the inference of the intent alleged in the indictment. Intent may be shown by circumstantial evidence, but whether the particular facts and circumstances shown in the case on trial are such as to justify an inference of the intent charged is a question for the jury and not the court.

Other instructions are complained of, but the criticisms are not of such a character as to require or justify detailed discussion. On another trial the errors complained of may easily be eliminated.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*