(No. 41252.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, *vs.* ROGER LOGUE, *alias* JOHN DOE, Appellant.

*Opinion filed March 24, 1970.—Rehearing denied May 26, 1970.*

Culbertson, J., took no part.

Roland N. Litterst, of Peoria, appointed by the court, for appellant.

Robert S. Calkins, State's Attorney, of Peoria, (Ronald L. Hamm, Assistant State's Attorney, of counsel,) for the People.

Mr. Justice Ward delivered the opinion of the court:

This appeal is from a judgment of the circuit court of Peoria County, which, after an evidentiary hearing, dismissed the defendant's amended petition filed pursuant to the Post-Conviction Hearing Act. Ill. Rev. Stat. 1967, ch. 38, pars. 122—1 *et seq.*

The defendant was taken into custody on July 21, 1965, for investigation in connection with the death of Billie Daniel. Three days later, an indictment charged him and Robert L. Seitz with the murder of Daniel. On July 28, the Public Defender for Peoria County was appointed by the

trial court to represent both of the accused. After conferring with Seitz alone, the Public Defender on August 3 filed a motion to withdraw as counsel for the defendant. The motion was allowed and an assistant Public Defender was designated to represent the defendant. A motion to quash the indictment and a motion to produce documents were subsequently filed and argued by the assistant Public Defender. A plea of not guilty was entered by the defendant on October 1 and the court denied his motions to quash and to produce. The defendant then filed a motion to have the assistant Public Defender withdrawn as his counsel and this motion was denied on October 7 after a hearing. On October 8, the assistant Public Defender filed a motion to inspect physical evidence and was permitted to examine proposed evidence in the hands of the State's Attorney. On October 11, 1965, the date previously set for trial, the defendant changed his plea of not guilty and entered a plea of guilty, after being properly advised by the court of the consequences of such a plea and after declaring his satisfaction with the services of his counsel. The court sentenced the defendant to a term of 20 to 40 years in the penitentiary.

The principal contention of the defendant in his post-conviction petition was that his plea of guilty was coerced, because of the incompetency of his counsel. In order to establish a constitutional inadequacy of representation by appointed counsel, a defendant must clearly demonstrate: "(1) actual incompetence of counsel, as reflected by the manner of carrying out his duties as a trial attorney; and (2) substantial prejudice resulting therefrom, without which the outcome would probably have been different." (*People* v. *Georgev,* 38 Ill.2d 165, 169, *cert.* den. 390 U.S. 998, 20 L. Ed. 2d 97, 88 S. Ct. 1202; *People* v. *Morris,* 3 Ill.2d 437, 449.) The defendant must bear the burden of proof in regard to these elements. *People* v. *Caise,* 38 Ill.2d 486; *People* v. *Georgev,* 38 Ill.2d 165.

To support the charge of incompetency, the defendant,

who was 25 years of age, testified that the attorney told him that he had never handled a murder case and was afraid to try it. As the defendant was an ex-convict, the attorney said, he would not be believed at a trial. "He tried to pressure me to plead by getting my father and mother upset and said he wouldn't be able to sleep if I got the electric chair," Logue testified. The lawyer told him, if the court inquired, to say that he was satisfied with his services. The defendant declared that he had asked the attorney to talk with his neighbors and co-workers but the attorney did not do so. He said he had wanted to plead self defense. He requested the attorney to talk with Seitz, the co-defendant, according to the defendant. He asked his counsel to seek out and interview two men who, in a way not made clear, could supply information, he said, which presumably would assist the defense. The defendant did not know the names of the men but he told his attorney they had records, described them and named taverns they frequented. The defendant on cross-examination testified that the two men had not seen the shooting and what information they could have furnished was not revealed.

The attorney testified, when called by the People, that he began the practice of law, in October 1962 as an assistant State's Attorney and that he served as a prosecutor from October 1962 to June of 1964, when he became an assistant Public Defender. He had never tried a murder case and had handled other felony cases only at the preliminary hearing stage. He denied the defendant had ever requested him to interview anyone and said the defendant never furnished names of any possible witnesses. The attorney testified the first time he heard of a defense of self-defense was when the defendant testified about it at the hearing. He had advised the defendant of possible penalties but denied he had told him that if convicted at a trial he would get the electric chair. He had filed motions to quash the indictment, produce documents and inspect physical evidence.

He discussed the case with the defendant four, five or six times and investigated possible defenses. He did not interview the defendant's ex-wife but read the testimony she gave at the inquest. He couldn't ascertain her whereabouts and asked the police to notify him if she was located. She had been subpoenaed by the prosecution to appear at the trial. The attorney related he had told the defendant he felt he could try a murder case but if the defendant wished someone who had tried murder cases to represent him, he would move to withdraw. The motion which was denied, was made at the defendant's request. He explained to the defendant that if he testified his testimony could be impeached because of his armed robbery conviction but he did not, he said, tell the defendant no one would believe him because he was an ex-convict. The attorney on cross-examination stated that he had investigated possible defenses but that the defendant never discussed a defense with him. When he was questioned again as to whether the defendant had discussed a defense with him, he offered to relate what he and the defendant had discussed if the attorney-client privilege was waived by the defendant. There was no answer to the court's question as to whether the defendant waived his privilege; the attorney for the defendant at the hearing told the court he did not have any further questions.

The attorney's testimony was thus in basic contradiction to that of the defendant. At a post-conviction hearing as in other court proceedings to determine facts without a jury, whether to believe testimony, wholly or partially or not at all, is for the trial judge who hears and sees the witnesses. Unless it appears his determination manifestly was erroneous, it will not be disturbed when reviewed. (*People* v. *Alden,* 15 Ill.2d 498; *People* v. *Kelley,* 44 Ill.2d 315.) The record shows that the defendant was fully informed of his pertinent rights before his plea of guilty was accepted. Six transcript pages are used to record the trial court's advising

the defendant in detail of his rights and inquiring whether he was fully satisfied with his representation. Whether this plea was coerced rested substantially on the credence to be given the defendant's testimony at the hearing. We find no basis for upsetting the trial court's evaluation of the credibility of the witnesses.

A further contention of the defendant is that he was denied the effective assistance of counsel because during the period preceding the appointment of the assistant Public Defender no attorney consulted with him. The Public Defender had been appointed to represent the defendant, but it is claimed that since he never conferred with the defendant, the representation was meaningless and, therefore, deprived him of his constitutional right to assistance of counsel. Viewing the evidence taken at the hearing, no prejudice to the defendant appears because he did not consult with counsel during this period. No claim is made that this in any way hindered the defendant in offering a defense or otherwise disadvantaged him. Under these circumstances the complaint is but formalistic and there is nothing to sustain the claim of unconstitutional denial of assistance.

We consider that the trial court was correct in its observation "that the evidence in this case does not disclose any basis for the allowance of the relief prayed for and is wholly lacking in that regard."

The judgment of the circuit court of Peoria County is affirmed.

*Judgment affirmed.*

Mr. JUSTICE CULBERTSON took no part in the consideration or decision of this case.