The People of the State of Illinois, Plaintiff-Appellee, *v.* Raymond L. Bannister, Defendant-Appellant.

(No. 57091;

First District (2nd Division)—February 26, 1974.

John J. Cassidy, Jr., of Chicago (Richard H. Sanders, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago, for the People.

Mr. PRESIDING JUSTICE HAYES delivered the opinion of the court:

On 22 July 1966, in two-count Indictment No. 66-2271, petitioner-appellant Bannister (hereafter petitioner) was indicted for the crimes of rape and burglary; both offenses arose out of the same occurrence. On 7 September 1966, the Public Defender was appointed as trial counsel for petitioner. Petitioner pleaded not guilty to each count and the cause was assigned for trial to be had on 11 October 1966. When the case was called for trial on that date, petitioner's counsel requested and was granted a short recess in order to confer with petitioner. Their discussion resulted in petitioner's authorizing his counsel to seek a plea conference with the prosecutor and the trial judge. Counsel did so in the manner and with the result discussed more fully hereafter. When the court recon-

vened, petitioner wished to withdraw his pleas of not guilty and enter pleas of guilty. After admonishing petitioner as to the consequences of a guilty plea to each count in respect of the waiver of a jury trial and of the potential sentence involved and after determining that the guilty pleas were voluntary, the court accepted the pleas, entered findings and judgments of guilty, and sentenced petitioner to not less than 1 year nor more than 10 years on each count, the sentences to run concurrently. No appeal was taken.

On 7 April 1970, petitioner filed a post-conviction petition *pro se* containing 16 paragraphs, each alleging a violation of constitutional rights. The post-conviction judge (who had also been the trial judge) appointed counsel other than the Public Defender to represent petitioner in the post-conviction proceedings, and, on 14 January 1971, an amended petition supported by petitioner's affidavit was filed pursuant to leave. The amended petition abandoned all of the violations previously alleged, and alleged instead simply that petitioner's pleas of guilty were involuntary in that they had been made in reliance on the representation of his trial counsel that said trial counsel had negotiated an agreement with the trial judge for concurrent sentences of 1 to 5 years in return for the pleas of guilty, whereas he had then received concurrent sentences of 1 to 10 years. On 4 February 1971, the State moved to dismiss petitioner's amended petition without an evidentiary hearing. On 2 March 1971, the State's motion was denied, and the trial judge then granted petitioner's request for an evidentiary hearing. On 22 April 1971, on petitioner's motion, the cause was transferred for the evidentiary hearing to another judge because of the possibility that the original trial judge might be called as a witness at the evidentiary hearing. On the same day, petitioner's post-conviction counsel, who had by then talked to petitioner's trial counsel at least once, filed a memorandum of law which argued for the first time that, if the trial judge had "participated" in the plea negotiation, petitioner was entitled to post-conviction relief (presumably in the form of setting aside the finding and judgment of guilty and the sentence, and affording petitioner the opportunity to re-plead).

On 6 May 1971, the evidentiary hearing was had. Petitioner testified in essence that, during the recess on the morning of his trial, his trial counsel had told him that he (counsel) did not think he could win the case; that the State was asking for concurrent sentences of 20 to 40 years;[1] that, if petitioner persisted in his pleas of not guilty, there was not too much counsel could do for him; that the best thing petitioner

---

[1] Under Ill. Rev. Stat. (1965), the penalties for rape and for burglary were the same: any indeterminate sentence with a minimum of not less than 1 year.

could do for himself would be to authorize counsel to ask the trial judge for short concurrent sentences, such as 1 to 5 years if possible, but that that would involve pleading guilty and seeking the mercy of the court; that petitioner so authorized counsel; that counsel returned and said that he had talked to the judge in chambers and had reminded him of petitioner's youth and of the absence of any violence in petitioner's past record, and that the judge had agreed to concurrent sentences of 1 to 5 years if petitioner entered pleas of guilty and sought the mercy of the court; that petitioner thereupon agreed, not because he was guilty but because he had no other way out; that counsel then instructed petitioner to say "yes, sir" to whatever questions he might be asked in open court; that petitioner knew something was wrong when he received concurrent sentences of 1 to 10 years, but that petitioner had been afraid to say anything; that petitioner never talked to trial counsel again.

The principal witness for the State was petitioner's trial counsel. He testified that he had been an assistant public defender for 4 years, beginning in 1964; that he had been assigned to this particular trial judge's court for about 6 months, and was familiar with the judge's consistent practice in plea negotiations initiated at the last moment on the day of trial; that he may have conferred with petitioner 2 or 3 times before the trial date; that he had conferred with petitioner again during a recess on the day of trial, and had volunteered to go to see the trial judge about a reduced sentence for petitioner, should petitioner plead guilty; that the State was proposing to recommend a sentence of 20 to 40 years on the rape charge, should petitioner be found guilty after a trial; that, when petitioner authorized him to do so, he had followed his usual practice of informing the Assistant State's Attorney that he was about to seek a conference with the trial judge; that the trial judge followed his usual practice when plea negotiations were sought at the last minute on the day of trial; that the said trial judge's usual practice was to meet in chambers with the prosecutor and the defense counsel where the judge examined the prosecutor's "prep sheet" or the police report summarizing the evidence against a defendant and listened to the State's recommended sentence; that after having listened to matters in aggravation and mitigation and defense counsel's sentence recommendation, the judge would then make his own independent proposal as to sentence, should defendant plead guilty; that the judge's proposal was the result of his own independent determination based on the evidence disclosed to him, and might exceed the State's recommendation or be less than defense counsel's recommendation or some sentence in between the competing recommendations of the prosecutor and defense counsel; that, in the instant case, the State's recommendation had been 7 to 25 years,

and his recommendation had been 1 to 5 years and the independent determination of the trial judge had been 1 to 10 years; that he then presented the judge's proposed sentence to petitioner for his decision whether to accept or refuse it; that petitioner had accepted it; that, if a different sentence were then given in the courtroom from what he had told petitioner the sentence would be, he would give up his license rather than let a travesty of justice like that occur.

At the conclusion of the foregoing testimony by petitioner's trial counsel, the State rested. Briefs were submitted and, on 1 June 1971, after oral argument, petitioner's post-conviction petition was dismissed. Petitioner's counsel then sought and obtained leave to amend the post-conviction petition to include the facts as to the trial judge's participation in the plea conference, as contained in the testimony of petitioner's trial counsel at the evidentiary hearing just concluded, so that the petition would support (or, as petitioner claimed, would more adequately support) the legal contention as to improper participation made in the memorandum of law which had been filed 2 weeks before the hearing, and then had been reintroduced and argued at the hearing.

The Post-Conviction Hearing Act (Ill. Rev. Stat. 1969, ch. 38, par. 122—5.) in conjunction with the Civil Practice Act (Ill. Rev. Stat. 1969, ch. 110, par. 46(3)) permits such amendments. The assistant State's Attorney specifically stated that he had no objection to the requested amendment. On this appeal, however, the State contends that the amendment came too late and that the issue of improper participation by the trial judge in the plea conference had therefore been waived by petitioner. We hold that it was not.

■■ Petitioner first contends that the dismissal of his post-conviction petition was erroneous in that the evidence adduced at the evidentiary hearing established that petitioner's pleas of guilty had been induced by the representation of his trial counsel that the trial judge had agreed to impose a lesser sentence than petitioner received. Petitioner does not contend that the evidence established that the trial judge had in fact so agreed. At a post-conviction hearing, whether to believe testimony, wholly or partially or not at all, is for the trial judge who hears and sees the witnesses. Unless it appears that his determination was manifestly erroneous, it will not be disturbed upon review. (*People v. Logue* (1970), 45 Ill.2d 170, 258 N.E.2d 323; *People v. Alden* (1959), 15 Ill.2d 498, 155 N.E.2d 617.) We cannot say from our examination of the record that the decision of the post-conviction judge as to what trial counsel's report as to what the trial judge's recommendation had in fact been was manifestly erroneous.

The sole remaining issue on appeal is whether the participation by

the trial judge in the plea conference, in the manner and to the extent disclosed in the testimony of petitioner's trial counsel at the evidentiary hearing, was improper in that such participation, made known to petitioner through his trial counsel, could not fail to exert such pressure on petitioner to accept the trial judge's proposed sentence as to coerce petitioner into pleading guilty. The fact that the plea bargain was faithfully executed is irrelevant to the factor of its inherently coercive nature. Bluntly put, petitioner's contention is that, in respect of the trial judge's involvement in plea negotiations, the method of plea negotiation approved in the American Bar Association's minimum standards relating to pleas of guilty (3.3(b)) is the sole acceptable method, and that the method of plea negotiation followed in the instant case involves the participation of the trial judge to an inherently coercive degree.

The crucial difference in the two negotiating procedures is the time sequence of the decisions of petitioner and of the trial judge. In the acceptable procedure, petitioner makes his decision *before* the trial judge makes his; hence, no influence is being exerted on petitioner by the trial judge at the time petitioner is making his decision. On the other hand, in the procedure in the instant case, the trial judge made his decision before petitioner made his, and that sequence created an inherent coercion on petitioner in making his decision. The inherent coercion consists of this: since the participating judge is the trial judge, petitioner fears what will happen to him sentence-wise, should he refuse the judge's own recommendation and persist in being tried on his plea of not guilty, whether by jury or in a bench trial.

Petitioner, however, confuses two apprehensions: (1) Should petitioner persist in being tried on his plea of not guilty, he must necessarily expect the potential of a more severe sentence than the sentence independently recommended by the trial judge, because the recommended sentence was in consideration of his plea of guilty and, should petitioner persist in his plea of not guilty, the consideration for the recommended sentence has failed; were a more severe sentence not potentially involved, the so-called plea bargain would be illusory, because petitioner would have received no consideration for the entry of his plea of guilty. Moreover, were there to be no potential of a more severe sentence, every criminal defendant could always request a plea conference on the day of trial for the sole purpose of learning the worst that could happen to him on trial and conviction, since the trial judge would then be estopped from imposing a more severe sentence. (2) The potentially more severe sentence would be magnified by a punitive attitude on the part of the trial judge caused by exasperation or injured vanity. Only the second

apprehension can conceivably be regarded as unduly coercing the plea of guilty so as to destroy its voluntariness.

We think it clear that, in order to sustain petitioner's contention, there need be no showing that a more severe sentence was *in fact* the result, at least in part, of a punitive attitude on the part of the trial judge. It is not the fact which is alleged to be coercing petitioner at the time he makes his decision; it is his fear of the potential fact. On the other hand, we cannot accept petitioner's contention that such fear to a coercive degree is *inherent* in the mere sequence of the decisions, so that such coercive fear would inevitably exist in every case. We think there is a middle ground, namely, that petitioner show that he had some reasonable basis for such coercive fear in any given case. (For an analogous holding in relation to the fact of an allegedly punitive sentence, see *People v. Busch* (1973), 15 Ill.App.3d 905, 305 N.E.2d 372, in which defendant contended that a sentence of 10 to 20 years which he received after a full revocation-of-probation hearing was in punishment for his rejection of the trial judge's offer (made after a conference between defense counsel, prosecutor, and the judge, held at defendant's request) of a sentence of 5 to 10 years if defendant would stipulate to the facts, so that no full hearing would be necessary. This court held that defendant's contention that the sentence was punitive must be established by evidence; that there was no such evidence in the record; and that the mere disparity between the sentences did not support an inference of punishment.)

We have not been cited to any Illinois case directly on point and we are not persuaded by petitioner's cases from other jurisdictions, because those cases are sufficiently distinguishable on their facts to render them inapplicable to the case at bar. Moreover, we note that the method of plea negotiation used in the instant case was used in 1966. The American Bar Association's minimum standards relating to pleas of guilty were approved in 1968. Our Supreme Court Rule 402 became effective in 1970. Neither the minimum standards nor Supreme Court Rule 402(d) adverts to the type of negotiation procedure used in the instant case, nor does either provide that the type of negotiation procedure to which it does advert (namely, the procedure in which the parties reach a prior agreement between themselves and only then approach the trial judge) is the only acceptable procedure.

■■ We are of the opinion that under the facts of this case, petitioner has shown no reasonable basis for any coercive fear that he would receive a more severe sentence as a result of a punitive attitude on the part of the trial judge, such as to destroy the voluntariness of his guilty

plea. Here, the plea negotiations were initiated, not by the trial judge, but by petitioner's counsel with petitioner's consent. Further, the plea agreement herein involved was not a bi-partite agreement between the trial judge and defense counsel, thereafter accepted by petitioner. Rather the agreement was a tri-partite agreement between defense counsel and the prosecutor and the trial judge thereafter accepted by petitioner and by the State. Neither are there any indications that the agreement was not fairly arrived at. The record demonstrates that the State's Attorney and defense counsel did the actual bargaining in presenting the competing sentence proposals and the bases for them, and that the trial judge, after having heard both sides, merely independently determined the sentence he would offer petitioner in exchange for a guilty plea. We think that the very fact that the trial judge meticulously guarded his independence of both the State and the defense in balancing their competing recommendations, makes it unreasonable to suspect that he would yield to vanity or exasperation.

Moreover, we note that the practicalities of the situation (namely, on the very day of trial, defense counsel and the prosecutor first indicate a desire to bargain) weigh heavily in favor of the utility and reasonableness of the negotiation procedure used in this case. One can hardly expect the opposing counsels immediately to arrive at a joint recommendation to present to the trial judge without an undue delay in the trial. To postpone the trial until a time when (if at all) a joint agreement is reached by opposing counsels would be unduly disruptive of the judicial process.

Where petitioner has no reasonable basis to fear that his rejection of the trial judge's independent recommendation will result in a punitive sentence arrived at by a vindictive judge, we see nothing improper in the negotiation procedure used in this case in 1966. There is a fundamental difference between a trial judge's initiation of the negotiations and his initiation of the sentence recommendation after having been informed of the competing recommendations of the parties and of the bases therefor (namely, the prosecutor's evidence and the matters in aggravation and mitigation).

For the foregoing reasons, we affirm the dismissal of petitioner's post-conviction petition after the evidentiary hearing thereon.

Affirmed.

STAMOS and LEIGHTON, JJ., concur.