THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
JACKIE R. KELLY, Defendant-Appellant.

First District (3rd Division)    No. 61639

Opinion filed June 3, 1976.

James R. Streicker and Lynn Sara Frackman, both of State Appellate Defender's Office, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon, David A. Novoselsky, and William J. Stacy, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE McGLOON delivered the opinion of the court:

Defendant, Jackie Kelly, was indicted for the offense of murder and after a jury trial was found guilty as charged. The trial court entered judgment on this verdict and sentenced defendant to a term of 14 to 20 years.

Defendant now appeals and contends as follows: (1) that he was denied his right to a speedy trial under section 103—5 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1973, ch. 38, par. 103—5); (2) that the trial court committed reversible error in permitting the State, over defense objection, to impeach its own witness by means of an unidentified prior statement for which no foundation had been laid; (3) that the evidence was not sufficient to prove defendant guilty of murder because there was no showing that the fatal shot was fired from defendant's gun; (4) that even if the evidence were sufficient to establish that defendant fired the fatal shot at the decedent, the verdict finding defendant guilty of murder is contrary to the evidence which warranted, at most, a voluntary manslaughter conviction; and (5) that defendant was denied effective assistance of counsel.

We affirm.

The instant shooting occurred during the early morning hours of June 23, 1973, and inside of the apartment building where defendant resided at 4103 South Prairie in Chicago. The atmosphere surrounding the shooting was one of violence as attested to by five witnesses who all stated that they were shot in front of defendant's residence approximately one hour before the instant shooting.

Defendant's testimony indicated that at approximately 3 a.m. on June 23, 1973, defendant was asleep in his third floor apartment at 4103 S. Prairie when he heard a loud knock at the door. Defendant asked who was there and a loud voice responded "Bro". At this time defendant was aware of the fact that five people had been shot in front of his apartment one hour earlier and when defendant heard the word "Bro" he thought that the person at the door had arrived to shoot him. Defendant picked up

his shotgun, then opened the door three or four inches. Defendant recognized "Bro" (later identified as Ward Haywood) as the same person he had talked to earlier in the day about fights occurring in the area. Defendant asked Haywood what he wanted and Haywood replied that he wanted to talk about a peace treaty to stop all the fighting and shooting. Defendant asked Haywood why he had shot five people in front of defendant's building and Haywood said he was not going to talk anymore. A shot then rang out from below and Haywood started to run downstairs. Defendant testified that he then shot at Haywood's back as Haywood ran down the stairs. Defendant further testified that Haywood had been trying to shoot him all day and that he knew this because when defendant had talked to Haywood earlier in the day Haywood pulled out a shotgun.

On cross-examination defendant testified that he did not notice a weapon on Haywood's person nor did he notice anybody else with a weapon. He did not see Haywood shoot the five people nor did he see the person who fired the shot before Haywood started to run. As Haywood ran away from the defendant, defendant fired a shot at Haywood's back but did not see Haywood fall. Defendant then went back into the apartment and told the people in the apartment to call the police. After abandoning the shotgun in front of the apartment building, defendant went to the sun porch where someone shot at him.

Defendant's brother, Larry Kelly, called as a witness by the State, testified that he was in the apartment at the time of the shooting and that at that time defendant had a shotgun. He heard defendant say that the person at the door was there to "shoot our whole people." Although Larry Kelly testified at trial that he could not hear the conversation between his brother and the man at the door, he admitted to testifying at the preliminary hearing that he heard the man at the door state that he was there to make peace and that his brother responded that after his friend was shot he wanted no peace.

Another of defendant's brothers, Sammy Kelly, also called as a witness by the State and inside the apartment at the time of the shooting, testified that defendant and the person at the door were talking about peace and the shooting occurred suddenly after they finished talking. Sammy Kelly stated that the defendant was armed with a shotgun and that he did not know if the other man was armed. After the door was opened, he heard two shots but did not see his brother shoot anybody. Over defense objection, the State was permitted to impeach Sammy Kelly, the State's own witness, with a prior statement that Sammy Kelly gave to police officers investigating the case. In this prior statement Sammy Kelly stated that he saw defendant shoot Haywood in the back as Haywood ran down the stairs.

Called as a witness by the State, Rudell Snead, a long-time friend of Ward Haywood, testified that he accompanied Ward Haywood to defendant's apartment on June 23, 1973. As Snead waited on the second floor of the building, Haywood went to defendant's apartment on the third floor. Shortly thereafter he saw Haywood turn his back to go downstairs at which time defendant shot Haywood in the back. Snead could not clearly see the gun that fired the shot but stated that defendant was holding the gun. After Snead heard the shot he started to run. He heard about three other shots but did not know the origin of these shots. Snead further testified that he did not shoot at anybody nor did he have a gun.

David Oravetz, an investigator for the Chicago Police Department, testified that he arrived at the scene of the shooting at approximately 3:30 a.m. and found Ward Haywood's body on the second floor landing. Officer Oravetz indicated that the stairway from the second floor landing to the third floor is completely open and that one could see from the third floor landing all the way down to the second floor. There was damage to plaster on the second floor landing and shotgun pellets on the floor. Officer Oravetz indicated that such damage could have been caused by a bullet. There was no evidence of bullets or pellets on the walls anywhere above the second floor landing.

Defendant first contends that he was denied his right to a speedy trial under section 103—5 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1973, ch. 38, par. 103—5). Defendant was in custody continuously from July 3, 1973, the date on which he surrendered himself to the police, until March 7, 1974, the date on which his trial began. Defendant argues that the last continuance he sought was until October 3, 1973, 155 days before the beginning of his trial. The State counters that on October 4, 1973, defendant moved for a continuance and filed a discovery motion thus occasioning delay suspending the 120-day statutory period.

■■ A resolution of the above conflict depends upon to whom the October 4, 1973, continuance is attributable. At the hearing on defendant's motion for discharge it was revealed that on October 4, 1973, a determination of defendant's indigency was made, an attorney was appointed for defendant and reciprocal discovery motions were filed. According to the certified copy of the court transcript for October 4, the trial court granted a continuance to November 9 stating:

> "State is given 15 days to respond to the defense's request for discovery and the defendant is given fifteen days thereafter to respond to the State's request for discovery. Order of the Court November 9th without subpoenas * * * to set for trial."

Although from the transcript it appears that the continuance to November 9 was by order of court, the minute order, reflecting the court's half-sheet,

states, "Motion defense, cause continued to November 9, 1973, without subpoenas." When there is such a conflict between the report of proceedings and the common law record, the matter must be considered on the basis of the record as a whole. (*People v. Anton* (1975), 26 Ill. App. 3d 928, 326 N.E.2d 108; *People v. Brownlee* (1974), 17 Ill. App. 3d 535, 308 N.E.2d 377.) It is clear that the trial court in considering defendant's motion for discharge considered both the common law record and report of proceedings together and we find no error in the trial court's determination that the continuance granted on October 4 was attributable to the defendant. On October 3 the attorney for defendant was first appointed and on October 4 defendant filed a discovery motion. At the hearing on the motion for discharge the trial court noted that the transcript was in error, that he had no reason to believe that the clerk's records were incorrect, and that the entire basis for setting the trial date was that the continuance was motion defendant. Considering the above together with the fact that the clerk's record clearly reflects that the continuance was motion defendant, we find the trial court did not err in dismissing defendant's motion for discharge.

■■ Defendant next contends that the trial court committed reversible error in permitting the State to impeach its own witness. Defendant points out that during its case-in-chief the State called defendant's brother, Sammy Kelly, as a witness and during the course of direct examination Sammy Kelly stated that although he heard two shots coming from the hall he did not actually see anybody get shot. At this point the State introduced into evidence a statement that Sammy Kelly gave to police investigators in which Sammy Kelly stated that he saw his brother shoot Haywood as Haywood ran down the stairs. Over defense counsel's objection, the State was permitted to use the above statement to impeach Sammy Kelly. It is a general rule of law that one may not cross-examine or impeach his own witness. (*People v. Boyd* (1974), 22 Ill. App. 3d 1010, 318 N.E.2d 212.) However, if a party finds it necessary to question the veracity of his own witness, procedures exist for so doing. Supreme Court Rule 238 (Ill. Rev. Stat. 1975, ch. 110A, par. 238) provides:

> "If the court determines that a witness is hostile or unwilling, he may be examined by the party calling him as if under cross-examination. The party calling an occurrence witness, upon the showing that he called the witness in good faith and is surprised by his testimony, may impeach the witness by proof of prior inconsistent statements."

Furthermore, a witness may be called as a court's witness and as such be cross-examined by either side. However, the party wishing to have the witness called as a court's witness must make a showing that manifest

injustice would result if the request were refused. *People v. Johnson* (1929), 333 Ill. 469, 165 N.E. 235.

In the instant case, Sammy Kelly was never examined as a court's witness, nor did the State ever move to have Sammy Kelly called as a court's witness. There was never any attempt by the State, prior to impeachment, to show that it called Sammy Kelly in good faith or that it was surprised by his testimony. Under such circumstances, the trial court erred in allowing the State to impeach its own witness.

■■ Even though it was error to allow the State to impeach its own witness without first having such witness called as a court's witness, we do not believe that the statement used to impeach Sammy Kelly constitutes a basis for reversible error. Defendant himself testified that he shot at Ward Haywood as Haywood ran down the stairs. Another witness, Rudell Snead, testified that he saw defendant shoot Haywood. In light of this testimony, Sammy Kelly's statement that he saw defendant shoot Haywood is not so prejudicial to defendant's case as to constitute reversible error.

■■ Defendant next contends that the evidence presented was insufficient to prove him guilty of murder because there was no showing that the fatal shot was fired from defendant's shotgun. It is true as defendant argues that several witnesses testified that they heard other shots fired in the building at the time Ward Haywood was killed and that there are no ballistics tests relating defendant's gun to the shot which caused Ward Haywood's death. However, as indicated by the above testimony of defendant himself and Rudell Snead, there is testimony that defendant fired a shot at Haywood as Haywood ran down the stairs and that this shot hit Haywood. Both Larry Kelly and Sammy Kelly testified that they heard two shots and that defendant fired one of these two shots. Larry Kelly went on to testify that after he heard the first shot, Haywood started to run and that defendant then shot at Haywood. Although the above testimony establishes that more than one shot was fired said testimony also indicates that the fatal shot was fired by the defendant.

Defendant next contends that even if this court finds that he fired the fatal shot, the evidence at most warrants a voluntary manslaughter conviction. We disagree. There is evidence in the record indicating that Ward Haywood came to the defendant's residence unarmed and for the purpose of talking "peace." There is further evidence of record that defendant shot Haywood as Haywood was running down the stairs. Although the atmosphere surrounding the instant shooting was rife with violence and there is evidence that another shot was fired, it is our conclusion that the evidence presented at trial justifies a conviction of murder.

■■ Defendant next contends that counsel's representation at trial was incompetent. The State correctly points out that in order to establish a constitutional inadequacy of representation by appointed counsel, a defendant must clearly demonstrate both actual incompetency of counsel and substantial prejudice resulting therefrom without which the outcome would probably have been different. *People v. Logue* (1970), 45 Ill. 2d 170, 258 N.E.2d 323.

The first instance of such alleged incompetency, defendant argues, was during direct examination when defendant's counsel asked defendant what he knew about the character of the deceased. The State objected to this question, the trial court sustained the objection, and defense counsel did not attempt to make an offer of proof. Defendant points out that he relied on self-defense as a basis for acquittal and that where a jury may believe from the evidence that the deceased was the assailant, then evidence of the deceased's violent disposition and prior threats or misconduct is admissible as tending to show mitigating or exonerating circumstances confronting the accused. (*People v. Davis* (1963), 29 Ill. 2d 127, 193 N.E.2d 841.) Defendant contends that counsel's failure to make the above offer of proof betrays a lack of effective advocacy. It is our decision that although counsel should have made an offer of proof, his failure to do so did not operate to prejudice the defendant. Based upon all the evidence presented at trial, the jury could not have believed that the deceased was the assailant and therefore the trial court correctly sustained the State's objection to counsel's question concerning the character of the deceased. Additionally, evidence of the deceased's prior threats was presented at trial when defendant testified that decedent had pulled out a shotgun and had been trying to kill him all day.

Defendant next argues that counsel was incompetent due to his failure to tender a voluntary manslaughter instruction. It is our conclusion after reviewing the record that counsel's decision to not tender an instruction on voluntary manslaughter was a decision based on trial tactics. As previously stated, we do not believe that the evidence presented would warrant a reduction of the offense to voluntary manslaughter and in such a case proper trial tactics may dictate that counsel avoid the submission of such an instruction. (*People v. Cantrell* (1973), 14 Ill. App. 3d 1068, 304 N.E.2d 13.) Furthermore, counsel sought a complete acquittal based on self-defense and avoided giving the jury the alternative of mitigating defendant's guilt. The failure of counsel to tender the voluntary manslaughter instruction was a matter of trial strategy, an area to which a review of counsel's incompetency does not extend. *People v. Wesley* (1964), 30 Ill. 2d 131, 195 N.E.2d 708.

■■ The final instance that defendant cites in urging that his counsel was incompetent occurred when defense counsel failed to submit an

instruction informing the jury that prior inconsistent statements can be used only to impeach a witness' credibility and not for the truth contained therein. The State impeached both Larry Kelly and Sammy Kelly by introducing on cross-examination statements which the above witnesses gave to investigating officers before trial. It is our belief that the above instruction should have been given but do not believe that counsel's failure to tender the above instruction establishes a constitutional inadequacy of representation by counsel. One of the essential elements of establishing such inadequacy is that substantial prejudice result from counsel's conduct in carrying out his duties, without which the outcome would have been different. (*People v. Logue* (1970), 45 Ill. 2d 170, 258 N.E.2d 323.) Considering all of the evidence presented at trial which overwhelmingly establishes that defendant fired a shot at deceased's back, as deceased, unarmed, was running down the stairs, we do not believe that had the above instruction been tendered the outcome would have been different.

For the above reasons, we affirm the judgment of the circuit court of Cook County.

Judgment affirmed.

MEJDA, P. J., and DEMPSEY, J., concur.