THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* KEVIN A. BRANNON, Defendant-Appellant.

Fifth District   No. 75-5

Opinion filed December 9, 1976.—Rehearing denied March 2, 1977.

Louis P. Johnson, of Metropolis, for appellant.

Stephen Spomer, State's Attorney, of Metropolis (Keith P. Vanden Dooren, of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE JONES delivered the opinion of the court:

Defendant entered a negotiated plea of guilty to a charge of unlawful possession of controlled substances (barbiturates, a Class 3 felony) and was sentenced to one to three years in the penitentiary. In this appeal defendant alleges that his plea of guilty was coerced in several particulars and sets forth allegations of error which we consider to have been waived

by the plea of guilty. However, defendant alleges matters concerning the allegiance of his appointed counsel, asserting that they contributed to the involuntariness of the plea. Accordingly, we will consider the alleged errors. See *People v. Bivens*, 43 Ill. App. 3d 79.

Defendant contends that the manner in which his defense counsel was selected and the circumstances under which his plea was negotiated reveal that the plea was, in essence, coerced. Evidence concerning these matters was adduced at a post-sentencing hearing on a motion to "Modify * * * the Judgment and Sentence" at which the defendant, his mother, a family friend, and the attorney who represented defendant during the plea negotiations testified.

In March of 1974 there were four charges pending against the defendant: the instant charge to which he pleaded guilty, a petition to revoke probation on a misdemeanor marijuana case, possession of cannabis, and a traffic charge. The public defender had been appointed to represent the defendant on the instant charge. Defendant's mother, who was acquainted with the State's Attorney, went to the State's Attorney to explain that she was interested in the rehabilitation of her son. The State's Attorney told her: "If you can get someone I can work with everything will be OK, but if you get the Public Defender or someone that is going to try to get him out of it, I will do my best to lock him up." The State's Attorney then recommended a local lawyer by name. The defendant and his mother went directly to this attorney's office and employed him on all four cases.

A hearing had been set for June 13, 1974, on the petition to revoke probation. Prior to that date there was one conference between the defendant and his retained counsel. On the day of the hearing on the petition to revoke probation, the defendant and his retained lawyer went to the office of the State's Attorney to negotiate on all the charges. The State's Attorney did most of the talking and the result was that if defendant would plead guilty to the charge of possession of a controlled substance the State's Attorney would recommend a sentence of one to three years and drop the other charges, including the petition to revoke probation. There was no private discussion of this offer between the defendant and his attorney but his attorney advised defendant that he thought the deal was the best for defendant, that the deal would be the most suitable and would probably be the best that defendant could get and that the decision was up to defendant. Defendant's attorney testified that he had had negotiations with the State's Attorney on two occasions prior to June 13. He also stated that when he and defendant had entered the State's Attorney's office on the 13th he had reiterated the negotiations and pointed out defendant's rights to have a jury trial and enter a plea of not guilty. Defendant asked for "a couple of weeks" to consider the

matter but was told he must accept or reject the offer immediately. The State's Attorney also indicated that if the defendant rejected the deal that he would seek the maximum sentence on all charges.

After defendant indicated he would accept the offer, the State's Attorney, the defendant and his lawyer went directly to the courtroom. There, the record shows, the defendant's plea was accepted by the court following a thorough admonishment to the defendant concerning his rights and an equally thorough inquiry of defendant as to his intention to waive those rights by pleading guilty. The factual basis for the plea was established by the State's Attorney as follows:

> "On the date in question, Mr. Brannon was involved in a disturbance at the Ace Laundromat and the police were notified, when they arrived Mr. Brannon had left the laundry. The police later come upon Mr. Brannon at the old Builders Supply building between 9th and 10th and stopped to place him under arrest. Mr. Brannon throwed a small plastic bag upon the roof of the building. The Officers retrieved the bag containing an amount of substance, believed to be a controlled substance. Officers Griffey and Chochran of the Metropolis Police Department being the officers. The officers forwarded the substance to the Crime Lab at DeSoto, Illinois where a Mr. Dan Lequocq analyzed the substance and returned a lab report showing the substance to be 29.3 grams of a substance containing a derivative of barbituric acid, if the officers and Mr. Lequocq were present and under Oath they would so testify."

After this recital, both defendant and his attorney acknowledged that it was substantially correct. The defendant waived a presentence report and sentencing hearing and the court imposed sentence immediately.

On July 15, 1974, the attorney retained by defendant was appointed an Assistant State's Attorney. On July 16, 1974, the "Order of Judgment" was filed along with a judgment, sentence and mittimus order and the official statement of the State's Attorney and the trial judge. On the same date of July 16, defendant's newly retained attorney filed a motion for appointment of special prosecutor alleging that the State's Attorney had resigned.

Defendant contends that these circumstances, when considered in their entirety, establish that his plea was not voluntary but was instead the result of pressure and coercion applied by the State's Attorney and acquiesced in by his own attorney. Defendant is not, apparently, contending that his lawyer's subsequent appointment as State's Attorney, per se, establishes a conflict of interest requiring reversal. Instead, he argues that the appointment, along with the recommendation by the State's Attorney of this lawyer by name to the defendant and his mother,

is evidence of complicity in pressuring the defendant to plead guilty. Defendant asserts that it was "common knowledge" that the State's Attorney was going to resign and that the defendant's lawyer was "the leading candidate for the job." Defendant is apparently asserting that his counsel, hoping for a favorable recommendation from the State's Attorney to serve as his replacement, provided less than vigorous representation for his client in order to obtain such a recommendation, to defendant's prejudice.

■■ We cannot agree with defendant's contention. The recommendation, even when followed by the appointment, without more, cannot serve to establish either coercion or a conflict of interest. It is a legal principle so well established as to make citation of authority superfluous that matters not shown by the record, no matter to what degree of "common knowledge" to others, cannot be relied upon by an appellate court. There is simply no evidence in the record as to any "negotiations," as alleged by the defendant, between the State's Attorney and the defendant's lawyer concerning any appointment, especially in conjunction with defendant's plea of guilty and the representation defendant received from his lawyer. To infer from the bare facts of the recommendation and the subsequent appointment of defendant's lawyer as State's Attorney that such negotiations took place and further, that they influenced the actions of defendant's counsel in this case, is unwarranted by the record before us. A dual allegiance is not shown to have existed.

In further support of his allegations the defendant points out that he had only one conference with his attorney before the plea bargaining session, that counsel never questioned him concerning the circumstances of the alleged offenses in order to determine if any defenses existed, that he was not informed of the State's Attorney's offer before the session, and that he was not given an opportunity to discuss the plea bargain privately with his attorney. Defendant also argues, alternatively, that this conduct establishes incompetency of counsel.

We disagree. The matters put forth by defendant as justifying a conclusion of either outright "conspiracy," lack of vigorous representation, or incompetency of counsel are not so glaring as to support such a conclusion. Defendant does not suggest that he requested to speak privately with his lawyer concerning the plea bargain offer and was denied the opportunity. Failure to inform the defendant of the plea negotiations before his first meeting with the State's Attorney does not rise to the level of establishing incompetent representation or an intent to "railroad" one's client. By his negotiated plea defendant received the minimum term of imprisonment for the charge for which he was convicted, and three other charges were dismissed, including a charge for violation of the probation defendant was serving when the instant offense

was committed. We consider that the penalty imposed seems commensurate with adequate representation by counsel.

Neither actual incompetency of counsel in carrying out his duties nor prejudice to the defendant as a result of that incompetency have been shown in the instant case. (*People v. Goerger*, 52 Ill. 2d 403, 288 N.E.2d 416; *People v. Logue*, 45 Ill. 2d 170, 258 N.E.2d 323.) Defendant alleges neither his innocence nor the existence of a valid defense which should have been presented to the trial court and by which failure to present he was prejudiced. To the contrary, the factual basis for the plea, the correctness of which defendant conceded, shows defendant's clear guilt.

■■ Defendant argues, in the alternative, that the State's Attorney's recommendation of an attorney deprived him of counsel of his choice. We disagree. Even though the recommendation by the State's Attorney of a specific lawyer to a defendant is a questionable practice, which we condemn, such a recommendation, even one phrased as was this one, does not deny a defendant freedom of choice in selection of counsel. Defendant was not forced to choose this attorney. The decision was his. It was defendant's mother, an acquaintance of the State's Attorney, who sought and received the State's Attorney's recommendation—the suggestion of counsel was not gratuitous on the part of the State's Attorney. Even though the State's Attorney's statement could be taken to mean, and perhaps did mean, that he would attempt to use extraordinary means to obtain a conviction, the defendant's protection from any possibility of overreaching by the State's Attorney lay in the orderly processes of the law, not in acquiescence to an implied threat. A State's Attorney is not the sole judicial officer charged with the responsibility for seeing that a defendant is treated fairly and evenhandedly.

■■ Defendant next contends that the trial court did not adequately admonish him as to his waiver of indictment and as to his right to a sentencing hearing.

The record discloses that during the plea proceeding, while present with counsel, the defendant was advised of the nature of the charge against him, the minimum and maximum sentence prescribed, and that he could be prosecuted only after indictment by a grand jury, unless he waived the indictment. In response to questions by the court, defendant several times stated that he wished to waive indictment.

The factual setting of defendant's waiver of indictment brings this case well within the rule of *People v. Page*, 38 Ill. 2d 611, 232 N.E.2d 689, where, in answer to a contention similar to that advanced by defendant here, the court stated:

"The proceedings reveal evidence from which the judge could justifiably conclude that the accused understood his rights and

there is no evidence indicating the contrary. While the court did not dwell upon the legal distinctions between an indictment and information, we believe the explanation sufficient, particularly since the defendant was given an ample opportunity to ask any questions he entertained regarding the waiver procedure, and his protestations of ignorance now asserted in this appeal fly in the face of his written waiver of indictment and his accompanying oral statement that he understood the judicial explanation which preceded the waiver." 38 Ill. 2d 611, 614.

Also see *People v. Wilson*, 132 Ill. App. 2d 537, 270 N.E.2d 88.

Defendant's argument regarding his inadequate admonishment regarding his right to a sentencing hearing is governed, adversely to defendant, by the recent case of *People v. Barto*, 63 Ill. 2d 17, 344 N.E.2d 433.

The defendant's final argument alleging the existence of an unfulfilled plea agreement is without foundation in the record and does not merit consideration.

Affirmed.

EBERSPACHER and KARNS, JJ., concur.