**People of the State of Illinois, Defendant in Error, v. Joseph DeMarco et al., Plaintiffs in Error.**

**Gen. No. 49,109.**

First District, Third Division.
November 27, 1963.

Thomas J. Maloney and Richard H. Devine, of Chicago, for plaintiffs in error.

Daniel P. Ward, State's Attorney, Cook County, of Chicago (Elmer C. Kissane, John J. O'Toole and Daniel J. Leahy, Assistant State's Attorneys, of counsel), for defendant in error.

MR. PRESIDING JUSTICE SCHWARTZ delivered the opinion of the court.

This is a writ of error to the Criminal Court of Cook County, seeking to reverse judgments entered on verdicts finding defendants Joseph DeMarco and Ralph Polk guilty of assault with a deadly weapon. A third defendant, Ronald Polo, had been declared insane and unable to stand trial. Errors in the admission of evidence, improper cross-examination, improper argument and alleged prejudicial remarks by the trial judge are charged. The sufficiency of the evidence is not contested.

Prince Duncan, the man assaulted, was a truck driver working for the L. G. Myles Company, located at 19 South Sangamon Street, in Chicago. During August 1961 there was a strike in progress at the Myles Company, and at least once a week the defendant Ralph Polk was on the picket line. On one occasion Polk told Duncan as Duncan drove his truck through the picket line, "It won't be long now, they are getting the flowers ready for you."

On August 14, 1961, at approximately 7:30 a. m., Duncan went to a Hertz Truck Rental parking lot at Kingsbury and Erie Streets in Chicago to pick up the truck he drove for the Myles Company. The truck was kept in the lot on weekends, and this was the third Monday in succession that Duncan picked it up

461

at that location. As he entered the yard, he was struck on the head from the rear. He turned and saw the two defendants and Ronald Polo, and as he did so, he was again struck on the head with a baseball bat.

Raul Herrera, a bystander, was sitting in his car on the north side of Erie Street adjacent to the parking lot when he saw the two defendants and a man he later identified as Ronald Polo walk into the truck rental yard carrying baseball bats. He observed the three men walk up behind Duncan. One hit him over the head with a baseball bat, and the other two hit him in the body until he fell and then kicked and hit him with the bats repeatedly. The two defendants and Polo then ran out of the yard to Erie Street and got into a car. Herrera followed them in his car, trailing them until he saw a police squad car. He stopped and told McCarthy and Gorman, the two officers in the squad car, of the assault. The officers pursued the defendants and finally apprehended them. Herrera had also been following and when he arrived, the two defendants and Polo were out of the car, with their hands above their heads. A few moments later, one of the police officers got into the defendants' car and one of the defendants got into the squad car. The little caravan started off, Herrera's auto last, with the idea of going to the scene of the crime. Enroute, for some reason unexplained on any legitimate basis, the caravan stopped and the defendants and police officers got out of the cars. They held a conversation for about five minutes before Herrera got out of his car and joined them. At this point, Polo placed a $5 bill in Herrera's pocket, with one of the policemen standing to Herrera's immediate left. Herrera told Polo, "I don't want your money," and gave the $5 bill back to him. Polo then placed a $10 bill in Herrera's pocket, with one of the police officers standing right by, and again Herrera gave the money back to Polo.

After this interchange, everyone proceeded to the Hertz truck parking lot at Erie and Kingsbury Streets, the scene of the assault. Herrera went directly to the lot, but on arrival found the police car and defendants' auto parked together nearly a block away. The squad car officers then looked at the lot. One officer took down Herrera's license number. Herrera went home, and the defendants were taken to the police station.

Meanwhile, Duncan had been taken by police to Henrotin Hospital and from there to Cook County Hospital. The police officer who took him to Henrotin Hospital described him as having several knots on his head and as being unable to answer questions. While Duncan was in County Hospital, the police brought the two defendants and Polo before him for identification. Duncan did not identify them, but later in the day he told police officer Roy Thyfault at the hospital, "I hope you haven't turned them guys loose because I remember them now. My remembrance is coming back. I would tell the truth, I was mostly scared." Thyfault said, "If you recognize them and them are the guys, would you sign a complaint?" Duncan said he would.

That same day the defendants and Polo were taken to the police station for identification. Herrera did not identify them at that time because, as he later explained, he was afraid to do so, and signed a statement accordingly. When called as a witness he identified them and made his explanation. Neither defendant testifed at the trial.

■ Defendants maintain that it was prejudicial error as well as hearsay testimony for the prosecution on redirect examination to bring out a conversation between Herrera and Edward Egan, First Assistant State's Attorney, held a week after the assault. During the conversation Egan promised Herrera police protection if he was afraid to testify because of his

wife and family. The prosecution's right to elicit this testimony on redirect examination to clarify why Herrera had not identified the two defendants and Polo at an earlier date is well established. It has always been the law that the testimony of an eyewitness to a crime explaining a prior inconsistent identification of a defendant is admissible. People v. Izzo, 14 Ill2d 203, 151 NE2d 329. Herrera's testimony was introduced for the purpose of rehabilitating his credibility when it was brought out on cross-examination that the state's witness had failed to identify the defendants. We do not understand how the defendants were prejudiced by having this information come out on redirect rather than on direct examination. It appears to us that this was the proper place for it.

█ Nor is the testimony of Herrera, recounting his conversation with Egan, hearsay. In People v. Carpenter, 28 Ill2d 116, 190 NE2d 738, hearsay is defined as an out of court statement offered for the truth of the matter asserted. In the case before us the jury was not asked to believe that Egan's offer of police protection was true or bona fide, but only that Herrera believed he would get the protection and that this explains the inconsistency between his prior failure to identify and his later testimony.

People v. Herbert, 361 Ill 64, 196 NE 821, cited by defendants, involved a conviction for murder. The wife of the murdered man testified on direct examination that she had police protection after the murder. There was no basis laid for that testimony such as there is in the instant case.

█ Some of the same arguments are made by defendants with respect to the admission of Duncan's conversation with Officer Thyfault. Here again, the conversation was introduced on redirect-examination for the purpose of rehabilitating the credibility of the

state's witness, and therefore it was not error to admit it.

Defendants further argue that prejudicial questions were propounded to Officer McCarthy, a defense witness, on recross examination and that prejudicial comments were made by the prosecution on the closing argument concerning the character of Officer McCarthy. Furthermore, defendants argue that the trial judge appeared to approve the comments by failing to sustain an objection to them. We cannot consider these alleged errors since defendants have failed to preserve them in their written motion for a new trial. Where grounds for a motion for a new trial are stated in writing, the party is limited to the errors alleged in the written motion, and all other errors are deemed to have been waived. People v. Hunter, 23 Ill2d 177, 177 NE2d 138; People v. Flynn, 8 Ill2d 116, 133 NE2d 257.

Defendants did preserve an objection to the court's direction to the prosecuting attorney to refrain from questioning the integrity of Officer McCarthy: "May I suggest, Mr. State's Attorney, that there are some remarks you make which are unnecessary. I can understand how you feel, but let us try the case as we should." From the record it is obvious that no prejudice could come from that remark. Viewed in context, it is a rebuke of the prosecutor for the line of cross-examination he had taken with Officer McCarthy.

Defendants argue the prejudicial nature of the prosecution's closing argument to the jury and the failure of the prosecution to base its argument on testimony which was in the record. Specifically they argue there was no evidence in the record that Herrera actually got the protection, since the trial court struck from the record the prosecution's question to him on

465

that subject. The basic issue on this point was Herrera's fear and his receiving assurances that he would be protected. There is ample evidence in the record on that issue.

■ On rebuttal the prosecution said that Officer McCarthy was being investigated by the police department. The defense contends this was prejudicial, for the direct evidence on that point was withdrawn by the prosecution. The defendants fail to recognize however that this statement was a reasonable inference from the evidence. McCarthy was a witness for the defense, and the state sought to discredit him by showing: (1) that he was present when Polo tried to bribe Herrera and that he (McCarthy) did nothing about it; (2) that by his own admission, he did not make a report of the beating or of the activities surrounding it on that day, nor has he ever made such a report even though he was under orders to do so; (3) that he did not transport the defendants directly to the police station; and (4) that he was questioned regarding this case by Sergeant Suess of the Internal Investigation Division of the Chicago Police Department, and testified on the trial that he lied to the sergeant when he gave a statement indicating he had not made the unexplained stop where Polo offered the money to Herrera, with McCarthy standing by.

■ Error is charged on the ground that the prosecuting attorney engaged in commentary on the evidence which was inflammatory and prejudicial. It is proper for the prosecuting attorney to reflect unfavorably on the accused. He may dwell on the evil results of crime and urge a fearless administration of the law. People v. Wright, 27 Ill2d 497, 190 NE2d 287; People v. Moore, 9 Ill2d 224, 137 NE2d 246, and cases there cited. It is our conclusion that the argument of the prosecution was not so prejudicial as to require a reversal.

466

The jury could scarcely have reached verdicts other than that of guilty. Finding no substantial error, the judgments of the Criminal Court of Cook County are affirmed.

Judgments affirmed.

McCORMICK and DEMPSEY, JJ., concur.