THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* WILLIAM LEWIS, Defendant-Appellant.

First District (3rd Division)    No. 79-2089

Opinion filed June 24, 1981.

RIZZI, P. J., dissenting.

George P. Lynch, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr, Pamela L. Gray, and John M. Hynes, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE McNAMARA delivered the opinion of the court:

Defendant, William Lewis, was charged with the murder of Timothy Gilfillan. A jury found defendant guilty of that crime and the court sentenced him to a term of 20 to 25 years. In a trial without a jury, a

co-defendant, Brian McCarthy, was found not guilty of the same crime. On appeal defendant contends that the trial court erred in failing *sua sponte* to instruct the jury as to voluntary manslaughter; that he received ineffective assistance from his privately retained counsel; that he was prejudiced by the bifurcated procedure by which the trial court conducted defendant's jury trial at the same time it heard McCarthy's trial without a jury; that the court erred in allowing into evidence, as a dying declaration, certain prejudicial hearsay testimony; and that the court erred in allowing jurors to take notes during trial.

On April 13, 1975, at 1 a.m., the deceased, who died five hours later, was shot by defendant. Defendant maintained that he shot the deceased in self-defense. McCarthy was charged with murder on an accountability theory. Defendant and McCarthy were members of a street gang known as the Latin Kings, while deceased was a leader of a rival gang known as the Simon City Royals. A "treaty" between the two gangs had been broken two weeks earlier when McCarthy started a fight by attempting to steal Royals' sweaters.

The State presented three occurrence witnesses: Michael Walden, Steven Trumbo and Eugene Dodaro. All were friends of the deceased; Walden and Trumbo were members of the Royals. On the evening in question they, along with deceased, were in an apartment in a building near Leland and St. Louis in Chicago. At the corner was a once graffiti-marred building which had just been painted by members of the Royals as a community project. The Royals were concerned that a rival group, such as the Kings, would mark the building. The deceased and Walden went outside to check the condition of the refurbished building, and observed defendant, McCarthy, a young man named Pothead, and a young woman. The three men were Kings. Deceased and Walden retreated to the apartment and notified the others. The four men then exited the building through the rear. For protection, Walden and deceased picked up sticks which had been used to stir paint. The pair concealed the sticks, and the four men walked towards the corner in a single file manner. The three witnesses testified that they saw defendant raise his hand and fire a shot. After the shot was fired, the deceased ran between two parked vehicles. Dodaro testified that he fell to the ground when he heard the first shot. Upon standing up, he saw defendant shoot in a downward position toward the ground three times, each time shouting a Latin King slogan. Walden and Trumbo also testified that they heard defendant call out and saw him fire three shots toward the ground. Walden and Trumbo ran towards the apartment, turned, and noticed that deceased was not with them. Walden searched and found him in the hallway of the apartment building, bleeding and in pain.

Dodaro testified that after the shots were fired he entered his auto-

mobile and sped towards defendant and drove past him. Dodaro brought the automobile to a screeching halt when he saw Pothead. Dodaro alighted to chase Pothead, but stopped when he heard a shotgun blast and turned to see the windshield of his automobile blown out. Dodaro drove away until he found police officers.

The medical examiner testified that the autopsy revealed that the deceased sustained four bullet wounds. The bullets entered the deceased's body at differing angles, indicating that the shots were not fired simultaneously.

Terry Richards, the young woman who was with defendant on the evening in question, testified for defendant that she, another woman, and the three men were enroute to a friend's home. When they reached the corner of Leland and St. Louis, the deceased and Walden came running from the alley swinging bats and shouting "Royal Love." An automobile then sped down the street and over the curb near where defendant stood. When defendant ran into the street and fired one shot in the air, four persons emerged from the automobile and moved towards defendant. Defendant fired three shots nearly simultaneously.

■■ We initially shall consider defendant's contention that he was prejudiced by the bifurcated trial procedure employed by the trial court.

McCarthy's trial without a jury was conducted at the same time as defendant's jury trial. During *voir dire* the judge determined that McCarthy's accountability defense might result in a strategy of deflecting fault from McCarthy to defendant and could unduly prejudice defendant. The judge thereupon instituted a procedure whereby direct examination of all State witnesses was presented before the jury, but cross-examination by McCarthy's counsel occurred outside the jury's presence. The judge additionally permitted defendant's counsel to re-cross-examine any State's witness after McCarthy's counsel had cross-examined so that defendant's counsel could elucidate any new matters brought out by McCarthy's counsel.

We perceive no prejudice to defendant through use of this procedure. Indeed, defendant benefited through his counsel's opportunity to sort through the cross-examination conducted by McCarthy's counsel and to select any positive aspects for presentation to the jury. Moreover, the judge thoroughly explained the procedure to the jury to alleviate any potential for confusion. The holding in *People v. Bradley* (1964), 30 Ill. 2d 597, 198 N.E.2d 809, upon which defendant relies, is readily distinguishable from the present case. There, both defendants on trial for armed robbery proceeded on a theory of improper identification. The State's key witness identified both defendants in the presence of the jury. Because the defenses were identical and because the witness' identification was crucial to both defendants, the court appropriately held that the jury

should have heard the defense evidence presented by co-defendant. Unlike Bradley, the present case presents distinct theories of defense. The cross-examination by McCarthy's counsel sought to discredit any testimony which placed McCarthy near the scene or made him accountable for the crime. On the other hand, defendant's position was that he shot the deceased but that he acted in self-defense. Testimony elicited by McCarthy's counsel may not have assisted defendant in this theory and, as the trial judge feared, may instead have prejudiced defendant.

Moreover, based on these distinct defense theories, defendant was not entitled to have the jury hear what, defendant claims, amounted to the "piercing" cross-examination by McCarthy's counsel. Both attorneys successfully impeached Walden by eliciting the testimony that a pending gun charge had been dropped in exchange for his present testimony. McCarthy's counsel additionally elicited from Walden that Dodaro tried to run defendant over, but only after defendant had fired the shots. Since defendant's self-defense claim depended on his firing the shots after the attempt to run him over, the omission of this testimony was not prejudicial to defendant. We also note that the trial court abrogated the bifurcated procedure during trial upon determining that McCarthy's counsel was not trying to project blame upon defendant. Defendant was not denied a fair trial by the procedure employed by the trial court.

Defendant cites the failure of the trial court to recall Trumbo as a witness after McCarthy's counsel had cross-examined him as an example of the prejudice caused by the bifurcated trial procedure employed by the trial court. Trumbo had testified on direct examination that after he saw defendant raise his arm and fire the first shot, he ran but turned to see defendant fire the next three shots. On cross-examination by defense counsel, Trumbo replied in the negative when asked if he told the police he only heard the last three shots. In later examination by McCarthy's counsel outside the jury's presence, Trumbo stated that he earlier told the police he heard the last three shots, but did not see defendant fire them. On the following day, defense counsel asked that he be permitted to examine Trumbo further. The trial court acquiesced, but Trumbo was not in court, and the trial court indicated that defense counsel could renew the request. Counsel subsequently renewed the request, but Trumbo was not recalled.

Defendant was not prejudiced by what appears to be an inadvertent failure to recall Trumbo as a witness. Defendant's claim of self-defense rested on Terry Richards' testimony that defendant did not shoot until after Dodaro attempted to run down defendant with his automobile. Walden and Dodaro testified, however, that the vehicle was driven in defendant's direction after shots had been fired. Trumbo testified that he did not see Dodaro during the course of the shooting. Impeachment on

the collateral matter of whether he had heard the last three shots, as opposed to observing defendant fire them, bears little on defendant's self-defense theory where it was undisputed that defendant did the shooting. Defendant was not prejudiced by the omission of this impeachment nor by the bifurcated trial procedure.

■■ We next consider whether it was the duty of the trial court to instruct the jury on its own initiative as to the lesser included offense of voluntary manslaughter. Where the evidence would sustain a conviction for voluntary manslaughter it is error for the trial court to refuse a tendered instruction on that offense. (*People v. Handley* (1972), 51 Ill. 2d 229, 282 N.E.2d 131; *People v. Joyner* (1972), 50 Ill. 2d 302, 278 N.E.2d 756.) In the absence of such a tender, however, the trial court has no duty to instruct the jury *sua sponte* on voluntary manslaughter. (*People v. Taylor* (1967), 36 Ill. 2d 483, 224 N.E.2d 266.) In *Taylor*, as here, defendant argued on appeal that the trial court should be required on its own initiative to instruct the jury as to manslaughter whenever the evidence would sustain such a conviction. In rejecting the argument, the court stated at pages 490-91:

> "When the evidence will support either charge and the prosecution does not tender an instruction on the lesser offense, the defendant has a choice, subject to the judge's authority to instruct *sua sponte*, of submitting one or both instructions. Different views have been expressed as to the consequences of submitting both instructions. It has been said that 'merciful, or weak jurors may disregard even overwhelming proof of culpability and acquit entirely or convict of a lower crime than the evidence reflects.' [Citation.] It has also been said that to give both instructions 'is apt to induce a doubtful jury to find the defendant guilty of the less serious offense rather than to continue the debate as to his innocence.' [Citation.]
>
> It may be that more accurate results would be obtained if the trial judge was required to instruct as to both the greater and the lesser offenses whenever the evidence would sustain either verdict, and in some jurisdictions such a requirement has been imposed by statute or by decision. [Citation.] But we are not sufficiently persuaded that we are willing to eliminate by judicial decision an established procedure that has long been considered to operate for the benefit of those accused of crime. We therefore adhere to our present procedure, and hold that the trial judge did not err in failing to give a manslaughter instruction on his own initiative."

(See also *People v. Spataro* (1978), 67 Ill. App. 3d 69, 384 N.E.2d 553; *People v. Hall* (1975), 25 Ill. App. 3d 992, 324 N.E.2d 50; *People v. Miller* (1974), 21 Ill. App. 3d 762, 316 N.E.2d 269; *People v. Mitchell* (1973), 12

Ill. App. 3d 960, 299 N.E.2d 472.) The rule that a failure to tender an instruction in the trial court precludes a claim of error on review stems in part from principles of waiver. (*People v. Roberts* (1979), 75 Ill. 2d 1, 387 N.E.2d 331.) Significant strategy considerations may influence a defense counsel's decision not to present the jury with the full spectrum of lesser included offenses where a complete defense of self-defense is claimed. (*People v. Taylor.*) Hence, where the defense wholly refrained from tendering an instruction on a lesser included offense, the possibility that such restraint may have been a viable strategy decision militates against our invoking any exceptions to the waiver doctrine.

■■ In *People v. Joyner* the supreme court reversed on the basis of the trial court's failure to instruct the jury on voluntary manslaughter. In that case, however, defendant tendered such an instruction, but the trial court refused to give it to the jury because it was defective in form. The supreme court appropriately held that it was error for the trial court not to instruct the jury *sua sponte* on the correct definition of voluntary manslaughter when defense counsel had submitted such an instruction, albeit in defective form. Defendant erroneously relies on *People v. Pernell* (1979), 72 Ill. App. 3d 664, 391 N.E.2d 85. In *Pernell*, we invoked the exception to the waiver doctrine where defense counsel failed to tender an instruction on defendant's solitary defense of self-defense. We held that in such an instance failure *sua sponte* to instruct the jury on self-defense was grave error which violated fundamental fairness to defendant. In contrast to *Pernell*, the present jury was fully instructed on self-defense. Failure to instruct the jury on the lesser-included offense of voluntary manslaughter could have benefited defendant by removing the possibility that weak jurors would render a compromise verdict, or that malicious jurors would take a middle ground even though self-defense was demonstrated. (*People v. Taylor.*) In this posture, we cannot say that the trial court erred by not instructing the jury on voluntary manslaughter when no instruction was tendered.

We reject the suggestion that the trial court bears the affirmative duty to state for the record that it has exercised its discretion in determining what instructions should be submitted to the jury. The cases are rare in which our supreme court has recognized that a trial court has refused to exercise its discretion, and such a conclusion has been reached only when the record clearly shows that the trial court believes it lacked the authority to apply its discretion in the matter. (See, *e.g., People v. Autman* (1974), 58 Ill. 2d 171, 317 N.E.2d 570; *People v. Queen* (1974), 56 Ill. 2d 560, 310 N.E.2d 166.) But where the trial court has rendered a decision in which it may exercise its discretion, and there is no evidence of a clear refusal to exercise discretion, our supreme court has presumed that the exercise has

duly occurred. See *South Chicago Community Hospital v. Industrial Com.* (1969), 44 Ill. 2d 119, 254 N.E.2d 448.

We next consider defendant's contention that the trial court improperly admitted prejudicial hearsay statements as dying declarations. Before trial, the court conducted a hearing on defendant's motion to exclude certain statements of the deceased made prior to his death. The trial court permitted the statements to be introduced as dying declarations.

■■ In order for statements to qualify as dying declarations there must be a determination by the trial court that the statements were made under the fixed belief of impending death. (*People v. Odum* (1963), 27 Ill. 2d 237, 188 N.E.2d 720.) The belief may be shown by the totality of the circumstances both before and after the declaration. (*People v. Tilley* (1950), 406 Ill. 398, 94 N.E.2d 328; *People v. Broughton* (1976), 35 Ill. App. 3d 619, 342 N.E.2d 100.) On review our inquiry is limited to whether the record supports the factual finding of the trial judge who observed the witnesses and heard the testimony when ruling on the admissibility of the declaration. *People v. Broughton.*

■■ In the present case, at 1 a.m., the deceased sustained four bullet wounds. One hour later, he was visited at the hospital by his brother and sister-in-law. A nurse told the brother, in the deceased's presence, that the deceased's lung had been punctured and that his heart had been pierced. Deceased then made a declaration. Fifteen minutes later, the deceased stated to his brother, "If something happens to me, put my sweater in with me." Deceased responded to an assurance that he would recover, by saying, "I'm not going to be all right. I'm never going to make it out of here." The deceased then requested of his sister-in-law, "I want you to put the sweater in with me." When his brother tried to reassure him, the deceased insisted, "Please, Greg, put them in with me." As his relatives exited, a police officer entered the hospital room and the deceased made another declaration. The record supports the trial court's determination that the deceased spoke while under "the fixed belief of impending death" when he told three persons defendant had shot him.

■■ Defendant also contends that he was denied effective assistance by his privately retained counsel. It is fundamental that where defendant retains counsel of his own choice his conviction will not be reversed for incompetency of counsel unless the representation was such that the trial was reduced to a sham or a farce or amounted to no representation at all. (*People v. Murphy* (1978), 72 Ill. 2d 421, 381 N.E.2d 677.) Accordingly, we do not stand in review of tactical, discretionary or judgment matters. *People v. Stephens* (1955), 6 Ill. 2d 257, 128 N.E.2d 731.

Defendant cites as an example of his counsel's incompetence his failure to ask for a severance. This was clearly a matter of tactical judg-

ment on the part of counsel and is not reviewable by us. (See *People v. Turner* (1976), 36 Ill. App. 3d 77, 343 N.E.2d 267.) Under this heading, defendant also argues that had defense counsel moved for a severance, McCarthy would have waived his fifth amendment rights and testified for defendant. He thus encases an argument that he was deprived of the testimony of a material witness within his contention that his counsel demonstrated incompetence by not making a pretrial motion for severance. A failure to investigate and uncover witnesses favorable to the accused, particularly when such testimony would exonerate the accused, may constitute inadequate representation of counsel. (*People v. Stepheny* (1970), 46 Ill. 2d 153, 263 N.E.2d 83.) A showing must be made, however, not only that counsel's action amounted to incompetence, but also that defendant was substantially prejudiced as a result of the particular action, without which the result probably would have been different. (*People v. Greer* (1980), 79 Ill. 2d 103, 402 N.E.2d 203.) No such showing has been made here.

The only suggestion in the record that McCarthy would have waived his constitutional right and testified for defendant is the bare assertion by counsel in a post-trial motion. The record is also devoid as to the substance of McCarthy's possible testimony. We are left to conjecture as to the impact of this omitted evidence, and such conjecture is not a basis for a demonstration of ineffective assistance of counsel. (*People v. Greer*; *People v. Witherspoon* (1973), 55 Ill. 2d 18, 302 N.E.2d 3.) In *People v. Elder* (1979), 73 Ill. App. 3d 192, 391 N.E.2d 403, the court held that where defendant fails to indicate the nature of the omitted testimony, he has failed to prove the requisite prejudice resulting from the omission.

In *People v. Cosey* (1980), 82 Ill. App. 3d 968, 403 N.E.2d 656, defendants' new counsel filed a post-trial motion alleging ineffective representation by defendants' trial counsel. The motion was supported by affidavits from five potential witnesses setting forth their testimony in favor of defendants. Nevertheless, this court affirmed the conviction holding that defendants had not demonstrated prejudice because the trial court had no reservations regarding the reliability of the prosecution testimony and because three affiants were biased as a result of their relationship with defendants. Similarly, in the present case, the jury heard the testimony of three prosecution eyewitnesses that defendant had murdered the deceased. We cannot say that any testimony of McCarthy, obviously biased in favor of defendant, would have changed the outcome.

■■ Similarly, defense counsel's decision not to submit a voluntary manslaughter instruction when a complete defense of self-defense is propounded is a tactical decision which cannot serve as a basis for an

ineffective representation claim. *People v. Kelly* (1976), 39 Ill. App. 3d 190, 350 N.E.2d 163.

Defendant also cites as an example of counsel's ineffective representation his failure to object to certain hearsay evidence introduced throughout the trial. The failure to object to evidence on hearsay grounds does not render assistance of privately retained counsel ineffective. (*People v. Zwienczak* (1930), 338 Ill. 237, 170 N.E. 303.) Moreover, defendant was in no way prejudiced by the introduction into evidence of the testimony of which he now complains. As we have ruled, the deceased's statements were properly admissible as dying declarations. Defendant also claims that defense counsel failed to object when the State introduced the testimony of a police officer that certain eyewitnesses told him defendant shot the deceased. Not only was this testimony admissible due to the presence in court and the availability for cross-examination of these witnesses, but the introduction of the testimony caused no prejudice to defendant since there was no dispute as to defendant having fired the shots. Similarly, no prejudice resulted from defense counsel's failure to object to the hearsay testimony that defendant was affiliated with the Latin Kings. Defendant's own evidence indicated that he and his friends were members of that street gang. Nor is ineffective representation demonstrated by defense counsel's failure to object to the prosecutor's comment in closing argument that defendant and his friends were not at a birthday party prior to the shooting, but were, instead, assembled to plan the deceased's murder. Even if this was an improper inference to draw from the evidence, it was not a material factor in defendant's conviction. (*People v. Clark* (1972), 52 Ill. 2d 374, 288 N.E.2d 363.) Nor was it necessary for defense counsel to object when, on redirect examination, the prosecutor rehabilitated Walden, who had been impeached by defense counsel on the basis of bias. Defense counsel had elicited testimony from Walden that a pending gun charge against him had been dismissed because of his agreement to testify in the present case. The prosecutor elicited from Walden that he would have appeared to testify without incentive but for the Latin Kings attempting to kill him while the case was pending.

This evidence was clearly admissible. The State was entitled to rehabilitate its witness with information tending to lessen the effect of the defense's showing of bias. (*People v. Burke* (1964), 52 Ill. App. 2d 159, 201 N.E.2d 636 (girl hated father because he previously had engaged in illicit acts); see also *People v. Gammons* (1970), 130 Ill. App. 2d 120, 264 N.E.2d 866 (prior inconsistent statement made because of fear of gang reprisal); *People v. DeMarco* (1963), 44 Ill. App. 2d 459, 195 N.E.2d 213 (prior misidentification followed by police offer of witness protection).) We

note, too, that McCarthy's counsel similarly impeached Walden and similarly did not object when the prosecutor offered the proper rehabilitation testimony. Both attorneys made the tactical decision to discredit the State's witness by showing bias, one of the strongest methods of impeachment. We will not now stand in review of defense counsel's tactical decision.

Defendant offers defense counsel's failure to subpoena a certain defense witness as another example of incompetence. Yet the record discloses that the whereabouts of this witness were unknown both during and after trial. Under such circumstances, failure to subpoena a witness could not be deemed incompetent.

Defendant also urges as a demonstration of defense counsel's incompetence defendant's request that McCarthy's counsel present closing argument on behalf of defendant. Apart from the fact that this request is not itself a showing of incompetency, it also must be noted that defendant changed his mind, wished defense counsel to make the closing argument, and that counsel did so. In that regard, defendant maintains that defense counsel's opening comment that he likes "to play it from the hip" demonstrates that counsel had not made a proper preparation. An examination of defense counsel's closing argument reveals, however, that counsel's remark was mere rhetoric in light of the in-depth and detailed closing argument which he presented to the jury. The remark did not reveal ineffective assistance of counsel.

Defendant further argues that defense counsel demonstrated incompetence by adopting, in some instances, the examination of or objections by McCarthy's counsel. Defendant complains specifically that after McCarthy's counsel questioned Terry Richards in the presence of the jury on direct examination, defense counsel chose not to present a second direct examination of the witness. We can perceive of no prejudice accruing to defendant nor any incompetency of counsel in the decision not to duplicate Richards' testimony. Similarly, defendant was not prejudiced by defense counsel's adoption of certain objections made by McCarthy's counsel. During the trial each counsel objected to rulings by the court; there was no necessity that each attorney recite reasons for the objections.

■■ Finally, we reject defendant's argument that McCarthy's acquittal viewed next to defendant's conviction demonstrates defense counsel's ineffective representation of defendant. The evidence presented against the two men was completely different. McCarthy was tried on an accountability theory while it was undisputed that defendant fired the shots which killed the deceased. Three eyewitnesses testified for the State that defendant fired those shots without provocation. In our view, defendant was found guilty, not because of the representation he received

at trial, but because of the overwhelming evidence against him. We believe that defendant was afforded a fair trial and received vigorous and effective representation from his privately retained counsel.

We find no merit in defendant's contention that reversible error occurred when jurors took notes during trial. The statute permits such note taking by jurors. Ill. Rev. Stat. 1979, ch. 78, par. 36.

For the aforementioned reasons, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

McGILLICUDDY, J., concurs.

Mr. PRESIDING JUSTICE RIZZI, dissenting:
I cannot agree with the conclusion of the majority. I would reverse the conviction and grant defendant a new trial because the jury was not given a voluntary manslaughter instruction and the record demonstrates that the trial court failed to recognize and exercise its discretion when the instruction was not tendered.

In murder trials, if there is evidence in the record which, if believed by the jury, would reduce the crime to voluntary manslaughter, a voluntary manslaughter instruction should be given. (*People v. Lockett* (1980), 82 Ill. 2d 546, 550, 413 N.E.2d 378, 381; *People v. Leonard* (1980), 83 Ill. 2d 411, 420-21, 415 N.E.2d 358, 363.) If the defendant fails to tender a voluntary manslaughter instruction, the trial court's discretion comes into play. In the exercise of its discretion, the trial court can give the instruction *sua sponte*, or it can give considerable weight to the wishes of the defendant and not give the instruction. Also, the trial court can exercise its discretion and give the instruction *sua sponte* over the objection of the defendant. *People v. Taylor* (1967), 36 Ill. 2d 483, 490-91, 224 N.E.2d 266, 270-71; *People v. Lewis* (1977), 51 Ill. App. 3d 109, 117, 366 N.E.2d 446, 451-52; *People v. Williams* (1973), 10 Ill. App. 3d 456, 459, 294 N.E.2d 98, 101.

Here, there was sufficient evidence, if believed by the jury, to have reduced the crime to voluntary manslaughter. Terry Richards was called to testify on behalf of co-defendant Brian McCarthy. She testified that on the eve of the shooting, she, Brian McCarthy and defendant had been at a birthday party from 8 p.m. until shortly after midnight. They left the party together, and while walking to another girl's house, they reached the corner of St. Louis and Leland. Decedent and another member of the Royals gang ran out from an alley waving a baseball bat and another object and yelling "Royal Love." Another member of the Royals gang then drove an automobile which "flew up on the sidewalk" at defendant.

Defendant jumped, ran around the left side of the automobile and into the intersection, and fired a shot in the air. Three or four other Royals gang members jumped out of the automobile, and one of them yelled, "Grab him." Defendant ran to the northeast corner of the intersection. Then, according to Terry Richards, the following happened:

"Tim ran towards [the defendant] and started to swing his baseball bat, and that's when the shooting started."

Under the circumstances, if the jury had been given a voluntary manslaughter instruction and verdict form, it could have concluded that defendant subjectively believed that the use of force was necessary, but that this subjective belief was unreasonable. If the jury reached that conclusion, then a verdict of voluntary manslaughter would have been returned. (See Ill. Rev. Stat. 1979, ch. 38, par. 9—2; IPI Criminal No. 7.05.) Moreover, the trial court gave the jury a self-defense instruction without objection by the State. Since the evidence supported a self-defense instruction, it would also have supported a voluntary manslaughter instruction. *Lockett*, 82 Ill. 2d 546, 551, 413 N.E.2d 378, 381.

In regard to the failure to give a voluntary manslaughter instruction, the majority relies upon and quotes from *People v. Taylor* (1967), 36 Ill. 2d 483, 224 N.E.2d 266. However, *Taylor* is distinguishable from this case. In *Taylor*, the record affirmatively demonstrated that the failure to give the instruction was the result of the trial court's recognition and exercise of its discretion. In *Taylor*, the court stated:

"*In exercising his discretion* it is appropriate for the judge to consider that from the point of view of the public interest in the punishment of wrongdoers, one whose conduct is unlawful should not escape punishment altogether because a jury does not believe that he is guilty of the greater offense. It is also appropriate for him to consider that from the defendant's point of view, the likelihood of a compromise conviction may be enhanced if the jury is permitted to consider successive offenses involving lesser degrees of criminality. In reaching his conclusion it is not impermissible for the judge to give weight to the views of the prosecution and defense as indicated by their requests for instructions. *In the present case the decision of the defendant's attorney not to request manslaughter instructions was clearly stated in response to the trial judge's inquiry,* and nothing in the record suggests that the attorney's decision was reached without consultation with his client." (Emphasis added.) 36 Ill. 2d 483, 491, 224 N.E.2d 266, 271.

In the present case, unlike the *Taylor* case, the record does not show that the trial court recognized and exercised its discretion in not giving the instruction. Here, the majority assumes that the trial court recognized and

exercised its discretion when the instruction was not given. To me, if the evidence supports a voluntary manslaughter instruction and it is not given, the record must affirmatively demonstrate that the failure to give the instruction was the product of the trial court's exercise of its discretion. (*Cf. People v. Autman* (1974), 58 Ill. 2d 171, 176-77, 317 N.E.2d 570, 572; *People v. Queen* (1974), 56 Ill. 2d 560, 565, 310 N.E.2d 166, 169; *People v. Jackson* (1975), 26 Ill. App. 3d 618, 629, 325 N.E.2d 450, 458.) It is not sufficient if the record, as in this case, only shows that the instruction was not given. Too much is at stake to merely assume that the trial court recognized and exercised its discretion when the instruction was not given.[1]

Where the evidence supports a voluntary manslaughter instruction and it is not given, a requirement that there be a showing in the record as to whether the trial court exercised its discretion in not giving the instruction is not an imposition on the trial court. In criminal cases, the purely passive role of the trial court in determining what instructions it should give to the jury is no longer acceptable.[2] With the publication, availability and use of the Illinois Pattern Jury Instructions, our judicial system is now of the age where the trial court plays an active and positive role in ensuring that the jury is properly instructed when a person stands to lose his liberty. Ordinarily, at the conference on instructions, the trial judge has the IPI in front of him, and he examines and approves the instructions in accordance with the IPI when the IPI is applicable. (See Ill. Rev. Stat. 1979, ch. 110A, par. 451(a).) Thus, the IPI is not just for the benefit of lawyers. It is also an essential tool for the trial court in determining which instructions are to be given. Moreover, in criminal cases, the trial court has a responsibility to ensure that the essential instructions are given (see *People v. Roberts* (1979), 75 Ill. 2d 1, 13-14, 387 N.E.2d 331, 337; ABA Standards, Trial By Jury, Commentary, at 116 (1968))[3], and the IPI is a tool which the trial court uses to fulfill this responsibility.

Here, we have a murder trial where there was sufficient evidence which, if believed by the jury, would reduce the crime to voluntary manslaughter. The Committee Note for IPI 7.05 (voluntary manslaughter) provides:

---

[1] For a discussion regarding the importance of a defendant's right to have the jury instructed on included offenses, see generally *Beck v. Alabama* (1980), 447 U.S. 625, 65 L. Ed. 2d 392, 100 S. Ct. 2382.

[2] In another context, the principle that the trial court must play a positive role in ensuring that the defendant receives a fair trial is discussed in *Cuyler v. Sullivan* (1980), 446 U.S. 335, 351, 64 L. Ed. 2d 333, 348, 100 S. Ct. 1708, 1719.

[3] In *Glasser v. United States* (1942), 315 U.S. 60, 71, 86 L. Ed. 680, 699, 62 S. Ct. 457, 465, the court stated: "Upon the trial judge rests the duty of seeing that the trial is conducted with solicitude for the essential rights of the accused."

"When the charge is murder, the defense is self defense, and the proof supports a voluntary manslaughter instruction and verdict, the order of instructions should be: *first*, Instruction 7.01 (Murder); *second*, this Instruction 7.05; *third*, applicable instruction from Chapter 24—Defenses."

Consequently, in order to ensure that the jury was properly instructed, it was the duty of the trial court at the conference on instructions to exercise its discretion to give or not to give the IPI voluntary manslaughter instruction when it was not tendered. Where, as here, the record only shows that the voluntary manslaughter instruction was not given, the consequences are too great to merely assume that the failure to give the instruction was the result of the trial court's exercise of discretion. As a result, I cannot agree with the majority's assumption that the trial court properly exercised its discretion and chose not to instruct the jury *sua sponte* on the lesser offense.

The majority also relies, in part, on the doctrine of waiver. However, the necessity for the remediation of serious errors which severely threaten the fundamental fairness of a defendant's trial when the defendant stands to lose his liberty transcends the doctrine of waiver. (See *People v. Jenkins* (1977), 69 Ill. 2d 61, 67, 370 N.E.2d 532, 534; *People v. Joyner* (1972), 50 Ill. 2d 302, 307, 278 N.E.2d 756, 759; *People v. Pernell* (1979), 72 Ill. App. 3d 664, 666, 391 N.E.2d 85, 87; *People v. Martinez* (1979), 76 Ill. App. 3d 280, 283, 395 N.E.2d 86, 89; *People v. Whitney* (1980), 86 Ill. App. 3d 617, 621, 408 N.E.2d 268, 271.) In *Pernell*, this court stated:

"While the failure to tender a particular instruction may constitute a waiver of any claim that the instruction should have been given, we believe the defendant's failure to tender IPI Criminal No. 25.05 is not as important with reference to fundamental fairness as the quintessential requirement that the jury be properly instructed when one stands to lose his liberty." (72 Ill. App. 3d 664, 666, 391 N.E.2d 85, 87.)

Although *Pernell* involved the failure to give a self-defense instruction, the same principle applies to the failure to give a manslaughter instruction. In *People v. Roberts* (1979), 75 Ill. 2d 1, 11-12, 387 N.E.2d 331, 336, the court stated:

"In *People v. Joyner* (1972), 50 Ill. 2d 302, an error regarding the failure to instruct on a lesser included offense was not waived because, as noted by the court:

'This was a close case factually and it was possible for the jury to find the defendants guilty of murder, not guilty by reason of self-defense, or guilty of manslaughter.' (50 Ill. 2d 302, 307.)

The court felt that by not instructing on manslaughter the option to find the defendants guilty of manslaughter was not open to the jury. The court also noted that the defendants' failure to tender the appropriate instruction was not as important to the fundamental fairness of their trial as the requirement that the jury be properly instructed."

Likewise, this case is close factually as to whether defendant had an unreasonable belief that circumstances existed which justified the killing. However, since the court did not instruct the jury on voluntary manslaughter, the jury did not have the option of finding defendant guilty of voluntary manslaughter. The difference between a voluntary manslaughter conviction and a murder conviction is obviously substantial. Under the circumstances, grave error was committed when the trial court failed to recognize and exercise any discretion with regard to instructing the jury on voluntary manslaughter. Accordingly, the failure to tender the voluntary manslaughter instruction is not as important with reference to fundamental fairness as the requirement that the jury be properly instructed.[4] The error should therefore not be considered waived.

There is absolutely nothing in this record to demonstrate that the trial court even considered giving the IPI voluntary manslaughter instruction to the jury. Plainly, a record must demonstrate more than is shown here before a tenable assumption can be made that the instruction was not given because the trial court recognized and exercised its discretion when the instruction was not tendered. The resulting injustice is too great for me to affirm a conviction of murder. I would reverse the conviction and grant defendant a new trial.

---

[4] The failure to give a voluntary manslaughter instruction is also raised in connection with defendant's argument that he was prejudiced by the alleged incompetency of his trial counsel. On the issue of incompetency of counsel, the majority places importance on the fact that defendant had privately retained counsel. In my opinion, whether defendant had privately retained counsel or appointed counsel is of no significance to any issue in the case. See *Cuyler v. Sullivan* (1980), 446 U.S. 335, 344-45, 64 L. Ed. 2d 333, 344, 100 S. Ct. 1708, 1716.