THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. GARY D. ELAM, Defendant-Appellant.

Fifth District   No. 5—95—0405

Opinion filed January 16, 1998.

Daniel M. Kirwan, of State Appellate Defender's Office, of Mt. Vernon, and Donna Hickstein-Foley, of Foley & Foley, of Chicago, for appellant.

Evan Owens, State's Attorney, of Golconda (Norbert J. Goetten, Stephen E. Norris, and Rebecca Sanders, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE GOLDENHERSH delivered the opinion of the court:

Following a bench trial, defendant, Gary D. Elam, was found guilty but mentally ill of home invasion, attempted kidnaping, and aggravated criminal sexual assault. Defendant was sentenced to the Illinois Department of Corrections for a term of 20 years' incarceration for home invasion, to be served concurrently with a term of 15 years' incarceration for attempted kidnaping, and these terms were ordered to be served consecutively to a term of 20 years' incarceration for aggravated criminal sexual assault. Defendant appeals, contending that (1) trial counsel was ineffective in presenting the defense of guilty but mentally ill and (2) consecutive terms of imprisonment totaling 40 years were excessive in light of defendant's criminal and mental histories and rehabilitation potential. We affirm.

I

On May 23, 1994, defendant was charged by amended information with committing a home invasion in violation of section 12—11(a)(1) of the Criminal Code of 1961 (720 ILCS 5/12—11(a)(1) (West 1992)), armed violence (720 ILCS 5/33A—2 (West 1992)), aggravated criminal sexual assault (720 ILCS 5/12—14(a)(1) (West 1992)), residential burglary (720 ILCS 5/19—3(a) (West 1992)), attempted kidnaping (720 ILCS 5/8—4(a) (West 1992)), and battery (720 ILCS 5/12—3(a)(2) (West 1992)).

The event giving rise to these charges occurred on April 29, 1994, when defendant unlawfully entered the home of the victim, displayed a knife, and sexually assaulted her.

The victim testified that on April 29, 1994, she returned home after 7 a.m., having worked a night shift at a nursing home. Upon

returning home, the victim bathed, set her alarm clock, and went to bed attired in some underpants. She fell asleep. Sometime later, someone entered her home. The victim thought it was her mother, who was coming to pick up some keys. The victim later discovered that it was defendant who had entered her home. The victim testified that she had never seen defendant prior to the day of the incident. Defendant wore jeans, a T-shirt, a bandanna, and a belt with a brown case for a knife.

Defendant tried to pull the bedsheet down, but the victim held on to the sheet, asking defendant what he wanted. He informed the victim that he would not hurt her if she were calm but if she fought him, he would kill her. At that point, defendant began hitting the victim and pulled the sheet down. Defendant straddled the victim while still hitting her. The victim testified that she heard the sound of a snap being released and saw defendant lay down a knife. The victim opined that it was a hunting knife about 12 inches long. The victim stated that defendant laid the knife down as he knelt to kiss her breast. The victim pushed a pillow or a part of the bedspread over the knife.

Subsequently, the victim's vision became blurred from defendant's blows to her head, so she stopped fighting and defendant removed her underpants. The victim told defendant she was menstruating. Defendant removed the tampon. The victim again began to struggle with defendant as he pulled her off the bed, turned her sideways on the bed, and unzipped his pants. Defendant tried to insert his penis into the victim's vagina. When his penis made contact with her vagina, she scratched him and started fighting with defendant. Defendant fought with the victim on the bed and then got up and told the victim that she was going with him for a couple of days. Defendant threw a pair of jeans and a sweatshirt at the victim, and she put them on. Defendant allowed the victim to wash her face and, restraining her by the neck and waist, led her through the trailer to the outside steps. As they stepped outside, the victim asked defendant to permit her to go back in to get her purse. Upon her return, the victim broke free from defendant and swung her purse at him. Defendant grabbed the victim around the waist, lifting her up as he attempted to force her into the car. The victim kept kicking the car door shut. Defendant then took the victim back inside the trailer and began hitting her, telling her he had warned her of what would happen if she fought back.

At that point, the victim's mother came to the trailer. The victim's mother testified that she heard her daughter screaming and crying. She saw defendant on top of the victim, choking and hitting

her. The victim was struggling to break free from defendant. The victim's mother tried to grab defendant's arms, attempting to separate the victim from defendant. Defendant shoved the victim's mother and told her to get out because it was none of her business. The victim's mother and the victim continued to struggle with defendant. The victim eventually broke free. Defendant fled from the residence and left in his car. The victim's mother described the car as a greenish-gray sedan with an antenna for a radio or CB. The victim's mother tried to read the license plate number on defendant's car and called the Pope County sheriff.

Bobby Hahn, a neighbor, observed a bluish-gray Chevrolet Cavalier car leaving the victim's driveway on the morning of the attack. Hahn was able to see the driver as the man backed out of the driveway. At trial, Hahn identified defendant as that man.

Illinois State Police Trooper Terry Rochford investigated the April 29, 1994, incident at the victim's residence. Rochford interviewed the victim and recovered physical evidence at the scene, which included a brown electrical cord, a tampon, a knife, a bandanna, a pillowcase, sheets, and a comforter. Forensic reports indicated that one red cotton fiber found on the bottom sheet possibly originated from defendant's red underwear.

The police began pursuit of defendant around 1:20 p.m. on the day of the incident. The pursuit lasted about 10 minutes. Defendant's car was stopped at a roadblock. Defendant was placed under arrest and given *Miranda* warnings (see *Miranda v. Arizona*, 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602 (1966)). Defendant was then taken to the Pope County sheriff's office and questioned.

Illinois State Police Special Agent Craig Short interviewed defendant. Short testified that defendant stated that he awoke at 3 a.m. on Friday, April 29, 1994. Defendant watched television for a while and then went for a drive. While driving east on One Horse Gap Lake Road, defendant encountered a white female driving a white pickup truck. Defendant turned around and followed the truck to the victim's residence. Defendant watched the victim enter the trailer. Defendant drove by, turned around, and returned, pulling into the driveway behind the victim's truck. Defendant entered the trailer through an unlocked door and walked through the kitchen, past the bathroom, and into the bedroom, where he found the victim lying in bed. Defendant told the investigators that he remembered the woman awakening and asking who he was and what he was doing there. Defendant remembered fighting with the victim and the victim's mother but did not recall sexually assaulting the victim. Defendant accurately described the exterior and interior of the victim's residence.

Defendant admitted to having a knife with him upon entering the victim's residence. During the interview, defendant was wearing a belt with an empty knife holder.

Dr. Michael Althoff, a psychologist, testified as an expert witness for defendant. Dr. Althoff evaluated defendant as to his mental state at the time of the offense. Based upon interviews with defendant, relatives, and jail personnel, as well as a review of medical records, notes from defendant, and police reports, Dr. Althoff diagnosed defendant as suffering from bipolar disorder, a severe mental illness. Dr. Althoff concluded that defendant was not insane at the time of the incident but, rather, defendant fit the legal definition of guilty but mentally ill. Dr. Althoff stated that in stressful conditions individuals with bipolar disorder commonly experience memory lapses. Because defendant could not recall his involvement in behavior related to the offense, Dr. Althoff was unable to determine defendant's intent at the time of the incident. Dr. Althoff opined that without the presence of a major mental illness and some significant stressors in his life, defendant would not have engaged in the behavior that became this offense.

During the bench trial, defendant cross-examined the victim, attempting to elicit that defendant did not make sexual contact with the victim. Defense counsel was able to elicit from the victim that she never saw defendant with an erection and that she was unable to determine if he had an erection. Defense counsel, during closing argument, contended that the evidence before the court did not support either the armed violence count or the aggravated criminal sexual assault count beyond a reasonable doubt. Defense counsel insisted:

> "The evidence before the Court in reference to all the counts in the informations, except for two, is certainly overwhelming, and the two counts I want to briefly address the Court [sic] is [sic] the armed violence count and the aggravated criminal sexual assault count, because I think beyond a reasonable doubt the evidence does not support the contention that Gary Elam's penis came in contact with the victim's vagina. I want to refer the Court's attention to my cross[-]examination of her[,] which certainly flushed out the details of why she thought his penis had come in contact with her vagina, because she said his hands were on my legs, but I asked her the question, [']I[I]s it possible some other part of his body, like his hands or his hips or some other part of his body had touched you there and you thought it was his penis[?'], because she testified she never saw that he had a hard-on and she never felt that he had a hard-on—or an erection—and she said, '[W]ell, his hands were on my legs,' and that was the only thing she said.

She said he unzipped his pants and he never took his pants off, and I submit to the Court[,] given the fact that that is such an important element in these two counts, that the State has not met its burden of proof to show beyond a reasonable doubt that that's definitely what happened. I will just make that argument to the Court because it could have been the side of his pants, the edge of his zipper area that was touching her there instead of his penis because she did not see it."

Defense counsel concluded by urging the court to consider defendant's mental illness in arriving at a judgment in the case, stating:

"[W]e would ask you to look at the overwhelming evidence on our side of the case about the state of mind this man had and the control he had over his faculties, and [we] would [ask you to] find that he was suffering from a substantial disorder of thought, mood or behavior which afflicted him at the time of the commission of the offense, which impaired his judgement, but not to the extent that he was unable to appreciate the wrongfulness of his behavior because I think what the evidence shows overwhelmingly from both sides of the coin is that Gary Elam, but for the fact that he suffers from this mental disorder, and but for the fact that he was suffering from this disorder on April 29th, 1994, would never have done anything like this. It was his illness that affected his ability to do the right thing, not to the extent that he didn't know right from wrong, but certainly led him down the path to do something that he would not have normally done, and, therefore, he is guilty but mentally ill, and that is why I am asking this Court to enter a judgement of not guilty of the two counts that I commented on, which were the armed violence count, which is Count Two, and the aggravated criminal sexual assault count, which is Count Three. Certainly the State's case has shown an attempt at that offense, but not a commission of it, and [we ask] that [for] any counts the Court finds him guilty on, that [sic] he be found guilty but mentally ill."

At the close of all the evidence, the court found defendant guilty but mentally ill on all counts. The court sentenced defendant to 20 years' incarceration for home invasion, to be served concurrently with a term of 15 years' incarceration for attempted kidnaping. The court further sentenced defendant to a term of 20 years' incarceration for aggravated criminal sexual assault, to be served consecutively. Defendant's motion to reduce sentence was denied. Defendant appeals.

## II

Defendant maintains he was denied the effective assistance of

counsel because trial counsel's theory of defense was to present evidence and argument that defendant was guilty of all charges but suffered from a mental disorder. Trial counsel presented testimony from three witnesses, all of whom testified regarding defendant's mental illness. Defendant further insists that Dr. Althoff, defendant's expert witness, made statements during direct examination that conceded defendant's guilt. Likewise, trial counsel, in his closing argument, abdicated defendant's innocence by stating to the court, "We are not disagreeing that Gary Elam committed a number of different crimes ***." Defendant argues that because counsel conceded defendant's guilt, trial counsel was ineffective and defendant's convictions must be reversed. We disagree.

■ A defendant asserting the ineffective assistance of counsel must show (1) that his counsel's performance " 'fell below an objective standard of reasonableness' " and (2) that " 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *People v. Hattery*, 109 Ill. 2d 449, 461, 488 N.E.2d 513, 517 (1985), quoting *Strickland v. Washington*, 466 U.S. 668, 688, 694, 80 L. Ed. 2d 674, 693, 698, 104 S. Ct. 2052, 2065, 2068 (1984). However, there are some circumstances where the two-part test set forth in *Strickland* need not be applied. In *Hattery*, our supreme court stated, "Where 'counsel entirely fails to subject the prosecution's case to meaningful adversarial testing, then there has been a denial of Sixth Amendment rights that makes the adversary process itself presumptively unreliable.' " *Hattery*, 109 Ill. 2d at 461, 488 N.E.2d at 518, quoting *United States v. Cronic*, 466 U.S. 648, 659, 80 L. Ed. 2d 657, 668, 104 S. Ct. 2039, 2047 (1984). However, it is not *per se* ineffective assistance of counsel "whenever the defense attorney concedes his client's guilt to offenses in which there is overwhelming evidence of that guilt but fails to show on the record consent by defendant." *People v. Johnson*, 128 Ill. 2d 253, 269, 538 N.E.2d 1118, 1124 (1989). "In situations where there is overwhelming evidence of guilt and no defense, if counsel contests all charges he is liable to lose credibility with the trier of fact when it comes to charges where a legitimate defense exists." 128 Ill. 2d at 270, 538 N.E.2d at 1125.

■ In light of the facts in this case, we believe that defense counsel's representation subjected the State's case to meaningful adversarial testing. Likewise, counsel did not unequivocally abdicate defendant's innocence to the State's charges or concede all of the elements of home invasion, residential burglary, attempted kidnaping, armed violence, aggravated criminal sexual assault, and battery. Counsel, during trial and closing argument, asserted a theory of in-

nocence with respect to two of the charges against defendant, namely, armed violence and aggravated criminal sexual assault. Counsel, during cross-examination of the victim, attempted to elicit details about defendant's alleged nonthreatening display of the knife and the alleged criminal sexual assault to show that the elements of these offenses had not been established beyond a reasonable doubt. Similarly, during closing argument, counsel, referring to the victim's cross-examination testimony, maintained that the State did not meet its burden of proof because the evidence did not support, beyond a reasonable doubt, the armed violence and aggravated criminal sexual assault counts. Clearly, defense counsel's strategy does not indicate a wholesale abandonment of defendant's defense.

Further, defense counsel did not unequivocally concede all elements of the remaining counts of home invasion, residential burglary, attempted kidnaping, and battery but rather acknowledged that the evidence was overwhelming that defendant committed these acts. "When faced with overwhelming evidence, counsel faces a difficult task." *People v. Guest*, 166 Ill. 2d 381, 396, 655 N.E.2d 873, 880 (1995). Here, had counsel contested all charges, he would have lost credibility with the trier of fact when it came to the armed violence and criminal sexual assault charges where a legitimate defense could be asserted. *Johnson*, 128 Ill. 2d at 270, 538 N.E.2d at 1125. Rather than lose credibility by contesting the remaining charges in which there was overwhelming evidence of defendant's guilt and no valid defense, counsel opted to ask the court for the entry of a judgment of guilty but mentally ill. We find that although defense counsel conceded defendant's guilt for home invasion, residential burglary, attempted kidnaping, and battery, counsel did not concede guilt for armed violence and criminal sexual assault. Therefore, defense counsel did not entirely fail to subject the prosecution's case to meaningful adversarial testing.

### III

Because we conclude that defense counsel subjected the State's case to meaningful adversarial testing, we now apply the *Strickland* test to determine if counsel's representation was ineffective. "Claims of ineffective assistance of counsel may be disposed of on the ground that the defendant suffered no prejudice from the claimed errors, without deciding the first prong, whether the errors were serious enough to constitute less than reasonably effective assistance." *Johnson*, 128 Ill. 2d at 271, 538 N.E.2d at 1125. Under *Strickland*'s second prong, the defendant must show that "there is a reasonable probability that, absent the errors, the factfinder would have had a

reasonable doubt respecting guilt." *Strickland*, 466 U.S. at 695, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068-69.

■ Defendant claims that counsel committed error in presenting a guilty but mentally ill defense in the context of a trial. Defendant asserts that he could not be found guilty but mentally ill after a trial because he did not raise an insanity defense. Defendant further argues that mental illness is not an affirmative defense, unlike insanity, and that defense counsel's guilty but mentally ill defense at trial amounted to an attempt to enter a blind guilty plea. We disagree.

On November 7, 1994, defendant filed a motion for the County of Pope to pay for expert witnesses, and in the motion defendant stated that he intended to raise the insanity defense and sought payment of professional costs for defendant's psychological evaluation. On November 18, 1994, the trial court entered an order approving payment for professional services and testimony. The order stated that defendant intended to assert an insanity defense and that the psychological evaluation was necessary for the presentation of that defense. The record clearly shows that defense counsel intended to present an insanity defense.

After evaluating defendant, reviewing his medical and psychological histories, and interviewing family members and others, Dr. Althoff concluded that defendant was not legally insane at the time he committed the offenses. Instead, Dr. Althoff diagnosed defendant as suffering from bipolar disorder, a severe mental illness. Dr. Althoff testified that memory lapses are common among persons with bipolar disorder and that defendant had experienced such a memory lapse with respect to his involvement in the offenses at issue here. Defendant's memory lapse prevented Dr. Althoff from determining defendant's intent at the time of the crime. Therefore, Dr. Althoff concluded that defendant fit the category of guilty but mentally ill.

Defendant contends that the question of his insanity remains unresolved and that defense counsel should have sought a second opinion to determine whether insanity might exist. Defendant insists that defense counsel's failure to obtain a second medical opinion is akin to ineffectiveness claims based on the failure to investigate. A defense counsel's failure to investigate and discover witnesses favorable to the defendant may constitute ineffective assistance. *People v. Lewis*, 97 Ill. App. 3d 982, 990, 423 N.E.2d 1157, 1164 (1981). However, it must be shown "not only that counsel's action amounted to incompetence, but also that defendant was substantially prejudiced as a result of the particular action, without which the result probably would have been different." 97 Ill. App. 3d at 990, 423 N.E.2d at 1164. In light of defendant's prior diagnosis of bipolar disorder and

his extensive medical history with this illness, defendant has failed to present any evidence to demonstrate how a second medical opinion would have changed the outcome here. We decline to speculate as to the nature and impact of this omitted evidence. Such speculation cannot be a basis for a showing of ineffective representation. 97 Ill. App. 3d at 990, 423 N.E.2d at 1164. Further, defendant has failed to demonstrate how he was prejudiced by the omission of such expert testimony. Defense counsel is not required to manufacture a defense where no valid defense exists. *People v. Flores*, 245 Ill. App. 3d 149, 157, 613 N.E.2d 1372, 1378 (1993). Accordingly, we cannot conclude to a reasonable probability that a second expert's testimony concerning defendant's insanity at the time he committed the offenses would have led the court to a different result respecting defendant's guilt.

## IV

■ Lastly, defendant contends that in light of his criminal and mental health histories and rehabilitation potential, the court abused its discretion when it sentenced him to 20 years' incarceration for home invasion and 15 years' incarceration for attempted kidnaping, to be served concurrently, and 20 years' incarceration for aggravated criminal sexual assault to be served consecutively. Defendant claims that a total of 40 years' incarceration is excessive and that the trial court sentenced defendant to "what was in effect first degree murder time." Defendant complains that the trial court failed to adequately consider that defendant suffers from bipolar disorder, a severe mental illness, and that defendant's only criminal history involves two nonviolent offenses. Defendant maintains that the court failed to balance these considerations with testimonies that defendant is stable and law-abiding while following his medical regime. Defendant further asserts that the court's sentence reflects a failure to consider defendant's sincere plea of remorse for his actions. We disagree.

The imposition of a sentence is a matter of the trial court's discretion. *People v. Lintz*, 245 Ill. App. 3d 658, 668, 615 N.E.2d 366, 372 (1993). When a sentence falls within the statutory limit and there is no abuse of discretion, this court will not vacate or reduce a sentence. *People v. Camp*, 201 Ill. App. 3d 330, 340, 559 N.E.2d 26, 32 (1990).

The record shows that the trial court considered and weighed the particular facts and circumstances of the case as well as defendant's prior history. The court acknowledged, as a mitigating factor, that defendant was acting under a severe emotional problem at the time the offense occurred. The court found as aggravating factors defendant's conscious decision not to take his medication to control his illness and defendant's slight criminal history. The court noted

the seriousness of the crime defendant committed, and the court also noted that the incident could have escalated to a "death-involved event." The court opined that the incident could have been precluded had defendant followed the prescribed medical regimen for controlling his mental illness. Considering defendant's statement of remorse, the court observed that the situation was a sad case for both the victim and her family and defendant and the Elam family.

There is no suggestion in the record that the court failed to give meaningful consideration to all mitigating and aggravating factors. Instead, the sentencing decision was the product of a careful balancing of all factors and a well-reasoned attempt to fit the sentence to the particular offender as well as the offense. Defendant argues that the court did not give sufficient consideration to defendant's remorse and rehabilitation potential. We believe that these factors were not disregarded by the court but rather were not viewed as pivotal factors in its decision. "A trial court need not place greater weight on a defendant's rehabilitation potential than on the seriousness of the offense and the need to protect the public." *Lintz*, 245 Ill. App. 3d at 668, 615 N.E.2d at 372. Accordingly, the trial court did not abuse its discretion in its sentencing of defendant, and we decline to reduce the sentence.

For the foregoing reasons, the judgment of the circuit court of Pope County is affirmed.

Affirmed.

CHAPMAN and MAAG, JJ., concur.